## MOBILE, JACKSON AND KANSAS CITY RAILROAD COMPANY *v.* STATE OF MISSISSIPPI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 218.   Argued April 29, 1908.—Decided May 18, 1908.

The creation of a board of railroad commissioners and the extent of its powers; what the route of railroad companies created by the State may be; and whether parallel and competing lines may consolidate, are all matters which a State may regulate by its statutes and the state courts are the absolute interpreters of such statutes.

Where the contention of plaintiff in error that a charter right has been impaired by subsequent state action was disposed of by the state court on the non-Federal ground that if any such right ever existed plaintiff in error was estopped by its own conduct from asserting it, this court cannot review the judgment on the alleged Federal ground of impairment of the contract.

A decree of a state court requiring a railroad company which does an interstate business to construct its lines within the State in accordance with the provisions of its charter and the directions of the state railroad commission is not an interference with interstate commerce because compliance therewith entails expense or requires the exercise of eminent domain.

How a state statute should be construed, whether a contract is created thereby, and whether the statute is constitutional under the state constitution, are not, in the absence of any claim that the contract, if any, has been impaired by subsequent state action, Federal questions.

89 Mississippi, 724, affirmed.

THIS is a bill in equity, brought by the State of Mississippi and the Railroad Commission of that State, to require the railroad companies to construct their railroad through the county seat of Pontotoc County, State of Mississippi, and to restrain them from abandoning a portion of the narrow gauge railroad formerly operated by the Gulf and Chicago Railroad Company, which ran to the town of Pontotoc.

The following is a summary of the bill: The Railroad Commission exists under the laws of the State of Mississippi, and is, under the laws, charged with the duty of supervising railroads and other common carriers, and also with the duty of

enforcing the observance of the laws by such companies and other carriers. The Gulf and Chicago Railway Company was organized in 1903, under the laws of Mississippi, with authority to construct a railroad from the town of Decatur, Miss., in a general northerly direction, through the county of Pontotoc, and through the State of Mississippi to the Tennessee line. At the time of the organization of such railway company there was in existence from the town of Pontotoc, Miss., to the town of Middleton, Tenn., a narrow gauge road, which was operated by the Gulf and Chicago Railroad Company, a corporation under the laws of Mississippi. The railroad company was bound to continue and preserve intact throughout its entire length the narrow gauge road, and the Gulf and Chicago Railway Company and its lessee, the Mobile, Jackson and Kansas City Railroad Company, hereafter called the Mobile Company, were in turn bound to so continue and preserve intact the said line, "broadened and standardized as was stipulated in the articles of consolidation hereinafter set forth." Prior to the sixth of July, 1903, the Gulf and Chicago Railway Company and the Gulf and Chicago Railroad Company, with other railroad companies, were consolidated under the name of the Gulf and Chicago Railway Company, and on that day a petition was presented to the Railroad Commission, praying the approval of the consolidation. It was stipulated in the petition, and by the granting of it by the Commission it was agreed, that the consolidated corporation should broaden and standardize the narrow gauge road running from the town of Pontotoc, "as it then existed and was being operated," and that when broadened and standardized it should be a part of the main line of the Gulf and Chicago Railway Company extending from Decatur, Miss., to Jackson, Tenn. The petition and order were made part of the bill. On or about the time of the consolidation, approved as aforesaid, the Gulf and Chicago Railway Company leased to the Mobile Company all of its railroad property then constructed and operated, and that thereafter to be constructed, including the narrow gauge road from Pon-

totoc to Middleton, and including its entire proposed line from Decatur to Jackson, and since the execution of the lease the Mobile Company has been in control and operation of the narrow gauge road. The Gulf and Chicago Railway Company, in violation of the terms and in disregard of the representations contained in its petition to the Commission, has broadened and standardized the narrow gauge road to a point one mile and a half from the end of the line in Pontotoc County and is operating the same. The remaining part, which is the most important part of the road, extending through a thickly populated district in the principal portion of Pontotoc, has been abandoned. It was a material consideration, in passing on the petition for consolidation, and the consolidation would not have been approved but for the representation that the company would standardize and broaden the line extending into the town.

The narrow gauge road was constructed in 1887 by the Gulf and Ship Island Railroad Company. When it was extended into Pontotoc a right of way was obtained by purchase, by the exercise of the right of eminent domain and by donations by the community, and when the right of way was selected it was with the view of extending the road south through the town. The town was built and established, and the town has been building for the last twenty years with reference to the line of railroad then so located. The interests of the public are involved in the change of road; the convenience and comfort of more than 1,000 people are involved; the change of road would disturb established conditions, and practically break up a prosperous community for the benefit of the defendants and a few property owners in another part of the town, recently added thereto, and through which it is proposed to run the new line of railroad. The original town of Pontotoc is the county seat of Pontotoc County, as fixed by the legislature of the State, and § 187 of the constitution of the State provides that no railroad thereafter constructed in the State "shall pass within three miles of any county seat without passing through the same and estab-

lishing and maintaining a depot therein, unless prevented by natural obstacles; provided such town or its citizens shall grant the right of way through its limits and sufficient grounds for ordinary depot purposes." The Gulf and Chicago Railway Company is constructing its new line within three miles of Pontotoc without passing through the same. There are no natural obstacles in the way. The citizens stand ready to grant the right of way through the limits of the town and sufficient grounds for depot purposes. In fact, the company owns a right of way through a large part of the town and sufficient ground for depot purposes. The conduct of the company is in violation of the constitution, and in willful disregard of the law and of the order of the Commission and the rights of the public.

The inadequacy of the remedy at law is alleged.

The injunction prayed was against the construction of the line of road proposed and to command the defendant to broaden and standardize the line of road extending through the town of Pontotoc, and to compel its operation into the said county seat as a part of the line built and to be built from Decatur, Mississippi, to Jackson, Tennessee, and to extend the said line on through to the said county seat, as required by said § 187 of the constitution of the State of Mississippi, and as required by law and by the order of the complainant, the Mississippi Railroad Commission. General relief was also prayed.

The answer of the defendant companies, in addition to traversing the allegations of fact of the bill, alleges the following: Prior to the filing of the petition, seeking the approval of the Railroad Commission of the State to the consolidation of the railroads, the officers of the companies had caused surveys to be made through the town of Pontotoc, with the view to best serve the interest of the people of that community in the location of the line of railroad and the establishing of its depot in the town, and it became apparent that it would be impossible to utilize that portion of the narrow gauge line extending north about one mile from the depot. This was submitted to the

people of the town prior to the application for consolidation, in a meeting called for that purpose, and, by an overwhelming majority, the position taken by the officers of the companies was acquiesced in and approved. Before the filing of the bill the companies had located and constructed their line as proposed at such public meeting, had purchased a depot site and erected a handsome and commodious depot on the site, into which it is now operating a standard gauge road. And all of this done before the filing of the bill.

The Railroad Commission made an order in the month of June, 1904, requiring the companies to build a depot on that part of the line of the narrow gauge road since abandoned, and upon the old site of the depot used by that road, and outside of the original town of Pontotoc, the enforcement of which was enjoined by the United States Circuit Court for the Southern District of Mississippi, which suit is now pending. The Commission is still insisting upon the order and resisting the efforts of the companies to enjoin its enforcement. Such order, it is alleged, is inconsistent with the bill in this case.

The line of road now being constructed by the Gulf and Chicago Railway Company from Decatur to Jackson is being constructed upon a different scheme of grades from that upon which the narrow gauge line was constructed, and necessarily adopted to enable the company to transact its business with the least expense and with the view of enabling it to successfully meet the competition of other lines. If the grades of the narrow gauge road had been adopted it would have been practically impossible for the railway company to operate successfully, because of the heavy grades, and would have caused an additional cost of construction of $90,000; would have lengthened the road, increased the fixed charges of maintaining the property, increased the cost of operation, and the cost to the company of transacting all interstate commerce business from Mobile, Ala., to Tennessee.

By amendments subsequently made to the answer it was alleged that when the consolidation of the companies was had

it was the purpose (which was well known to the Railroad Commission) of making the consolidated company a through trunk line of railroad for interstate commerce and the transmission of the mails, and that one of the vital objects to be attained was to shorten the line in every way possible. It is further alleged that a refusal to permit the execution of such purpose "will impose unnecessary and unreasonable burdens upon the interstate commerce and will violate in letter and spirit § 8, Article I, of the Constitution of the United States. And, it is alleged, that the southern end of the old narrow gauge road line runs into deep hollows and ends in a cluster of big hills, which, to cut through, would cause great expense and entail long delay; that the line would thereby be lengthened, and it would be hampered and prevented from doing an interstate business in successful competition with other lines."

The case, on petition of the railroads, was removed to the Circuit Court of the United States for the Eastern Division of the Northern District of Mississippi, and was subsequently remanded to the state court on motion of the defendants in error.

A temporary injunction was granted, enjoining and commanding the Mobile Company and the Gulf and Chicago Railway Company to "absolutely refrain from constructing and operating a certain line of railroad from Decatur, Mississippi, to Middleton, Tennessee, or any other line of railroad from any point whatsoever to any other point passing within three miles of the county seat of Pontotoc County, Mississippi, as the said county seat was originally laid out, marked and established, without passing through the said county seat . . ."

Upon motion of the companies and after proofs submitted a decree was entered dissolving the injunction, the decree reciting that all of the relief prayed for by the bill could be obtained by a mandatory injunction if the allegations of the bill should be sustained upon the final hearing; and further reciting that "the public interests of the county north and south of the town of Pontotoc, along the line of said railroad, as well as the

interests of the railroad, will suffer by reason of the continuance of the temporary injunction." All other questions were reserved until the final hearing.

The Supreme Court of the State reversed the decree, reinstated the injunction and remanded the case to the Chancery Court. 86 Mississippi, 172.

After a trial upon the merits the Chancery Court entered a decree, making the injunction perpetual. The decree was affirmed by the Supreme Court. 89 Mississippi, 724. Other facts will appear in the opinion.

*Mr. William Hepburn Russell* for plaintiffs in error:

The Federal questions presented by the record in this case confer jurisdiction upon this court to review the decision of the Supreme Court of Mississippi.

The record clearly shows claims of rights under the Constitution of the United States expressly made by plaintiffs in error in the court below, any one of which, if sustained, would have required the Supreme Court of Mississippi to reverse the decree of the Chancery Court of Pontotoc County. *C., B. & Q. Ry. Co.* v. *Drainage Com.,* 200 U. S. 561; *Grand Rapids Ry. Co.* v. *Osborn,* 193 U. S. 17; *Bridge Proprietors* v. *Hoboken Co.,* 1 Wall. 116, 142; *Yazoo &c. R. Co.* v. *Adams,* 180 U. S. 1, 15.

The decree of the Supreme Court of Mississippi, although avowedly placed upon a non-Federal ground, actually deprives the plaintiffs in error of their property without due process of law, and denies to them the equal protection of the laws by conferring upon the state Railroad Commission powers and authority not granted to it by the statutes of the State of Mississippi.

It sustains a claim of power and authority exercised by the state Railroad Commission compelling the plaintiffs in error to abandon their line of railway through the town of Pontotoc, as located, graded and in operation, and their depot as built and in use, and to acquire rights of way and locate and construct a new line through said town. The Railroad Commission of the

State of Mississippi "is a mere administrative agency of the State." *Mississippi R. R. Comm.* v. *Illinois Central,* 203 U. S. 335, 341. It has no powers beyond those given it by statute and is strictly limited in its exercise of power by the laws creating it. *Commissioners* v. *Oregon Ry. Co.,* 17 Oregon, 65; *Nashville R. R. Co.* v. *State,* 137 Alabama, 439.

The statutes of Mississippi forbid the consolidation of parallel and competing lines of railroad and forbid the Railroad Commission to consent to the consolidation of such lines and confer no power upon the Commission to enter into contracts whereby such a consolidation of competing lines can be effected. The orders of railroad commissioners are not contracts. *New Haven &c. R. Co.* v. *Hammersly,* 104 U. S. 1.

The decision of the Supreme Court of Mississippi deprives, without due process of law, the Gulf and Chicago Railway Company, plaintiff in error, of its vested contract rights under chapter 143 of the laws of Mississippi of 1906, which was a valid exercise of legislative power constituting a contract between the State and the plaintiff in error. *Blake* v. *McClung,* 172 U. S. 239; *Ex parte Virginia,* 100 U. S. 339; *Scott* v. *McNeill,* 154 U. S. 34, 45; *Douglas* v. *County of Pike,* 101 U. S. 677, 686, 687; *Edwards* v. *Kerzey,* 96 U. S. 595; *Gelpke* v. *Dubuque,* 1 Wall. 175, 206, 207; *Rowan* v. *Runnells,* 5 How. 134, 139; *Thompson* v. *Lee County,* 3 Wall. 327; *Olcott* v. *Supervisors,* 16 Wall. 678; *Guthrie National Bank* v. *Guthrie,* 173 U. S. 528, 533.

The Gulf and Chicago Railway Company having located its line through the town of Pontotoc and established its station therein in strict conformity to § 187 of the constitution of Mississippi and in accordance with its line between its terminal points as established by its charter, the state Railroad Commission, and the courts of Mississippi are without power to compel it to abandon that line and that station and establish a different line over a different route and a different station at a different point.

This proposition having been thus judicially established in *Mississippi* v. *Mobile, Jackson & Kansas City R. Co.,* 86 Mis-

sissippi, 172, the power of the state Railroad Commission over the line and station of the Gulf and Chicago Rail*way* Company in the town of Pontotoc was exhausted and the Supreme Court of Mississippi, upon the final appeal, by its decision and decree affirming the decree of the Chancery Court of Pontotoc County, deprives the plaintiffs in error of their property without due process of law, because although the proceeding was conducted under the guise of a judicial controversy, neither the State of Mississippi nor its Railroad Commission had authority to invoke the judicial power in confiscation of the property rights of the plaintiffs in error.

Statutes providing for enforcement by proceedings in chancery of the orders of the Commission, refer solely to the duties and powers enumerated in the statutory provisions under which a railroad commission is created and exists. *Nashville &c. Ry. Co.* v. *State,* 137 Alabama, 439.

The Supreme Court of Mississippi in its final opinion in this case rests its decree entirely upon an alleged contract in the order of consolidation. As such a contract was beyond the power of the Railroad Commission to enter into, the decree of the Supreme Court predicated upon it is a taking of property without due process of law and a denial of the equal protection of the laws to the plaintiffs in error.

The laws of Mississippi creating the state Railroad Commission and conferring powers upon it, if such powers go to the extent established by the opinion of the Supreme Court of Mississippi in this case, are laws impairing the obligation of contracts in this, that § 8 of the "Act to Incorporate the Ripley Railroad Company" conferred upon that company and upon the Gulf and Chicago Railroad Company as its legal successor the right to change the location of its line through the town of Pontotoc and under the decision of the Supreme Court of Mississippi holding that the Railroad Commission under the Railroad Commission laws had power to abrogate this right, the laws creating the Railroad Commission as so construed are laws impairing the obligations of contracts.

. *Mr. R. V. Fletcher*, Attorney General of the State of Mississippi, and *Mr. Hannis Taylor*, for defendants in error:

There is no Federal question presented by the record in this cause for the consideration of the court. The record shows that no right or question arising under the Fourteenth Amendment .was claimed or raised until after the final judgment of the Supreme Court of Mississippi. It was raised for the first time in the petition for writ of error. Under the decisions of this court, this was too late. *Montana* v. *Rice*, 204 U. S. 291; *Corkran Oil &c. Co.* v. *Arnaudet*, 199 U. S. 182; *Dewey* v. *Des Moines*, 173 U. S. 193; *Osborne* v. *Clark*, 204 U. S. 565.

The contention that the court has violated the clause of the Federal Constitution which prohibits a State from passing any law impairing the obligation of a contract, was raised for the first time in the assignment of errors filed in the Supreme Court of Mississippi on the second or final appeal of the case, and it is clear that this contention was rejected by the Mississippi court, if for no other reason than because is was raised too late. *Cox* v. *Texas*, 202 U. S. 446. See also, *Chi., I. & L. Ry. Co.* v. *McGuire*, 196 U. S. 127; *Jacobi* v. *Alabama*, 187 U. S. 131; *Eastern Bldg. & Loan Assn.* v. *Welling*, 181 U. S. 47.

Since the Supreme Court of Mississippi has declined to consider this assignment of error, solely upon the ground that it was not relied on in the Chancery Court, this court will respect the rules of practice in vogue in Mississippi, and will hold that the point was raised too late.

In any case, it is well settled that the prohibition of the Federal Constitution extends only to such judgments as give effect to statutes. *New Orleans Water Works Co.* v. *Louisiana Sugar Ref. Co.*, 125 U. S. 18, 30, 31; *St. Paul Gaslight Co.* v. *St. Paul*, 181 U. S. 124, 148; *M. & M. R. Co.* v. *Rock*, 4 Wall. 177; *M. & M. R. Co.* v. *McClure*, 10 Wall. 511; *Knox* v. *Exchange Bank*, 12 Wall. 379; *Lehigh Water Co.* v. *Easton*, 121 U. S. 338, 392; *New Orleans Water Works Co.* v. *Louisiana*, 185 U. S. 334.

The action of the Railroad Commission and the decisions of the Mississippi courts herein, do not constitute an interference

with interstate commerce. The commerce clause of the Federal Constitution cannot be applied to the location of a line of railway.  *C., M. & St. Paul Ry. Co.* v. *Solan,* 169 U. S. 133; *Wabash, St. L. & P. R. Co.* v. *Illinois,* 118 U. S. 557; *Mo., Minn. & Pac. R. R. Co.* v. *Jackson,* 179 U. S. 287.

Mr. Justice McKenna, after making the foregoing statement, delivered the opinion of the court.

The defendant railroad companies in their motion to dissolve the temporary injunction urged as grounds thereof, among others, that the injunction imposed a direct and unnecessary burden upon and was an interference with interstate commerce and an interference with the carrying of United States mail.  To those grounds the court did not apparently respond, and the Supreme Court did not refer to them in either of its opinions.

Counter contentions are urged.  Plaintiffs in error contend that the Federal questions set up by them were evaded. Defendants in error contend that such questions were not involved and are not now presented for consideration.

The opinion of the Supreme Court on the first appeal was very elaborate, and we can only give a brief summary of the propositions decided.  The court gives a summary of the facts of the bill, the averments of the petition to the Commission and the terms of its order, and says that "waiving minor considerations not sufficiently developed by the proof," and "passing at once to the very heart of the matter," the case divided into two main branches:

"1. What is the true interpretation to be given § 187 of our constitution and has it any application to the facts of this litigation?  2. What are the legal rights of the citizens of the town of Pontotoc and the duties of the appellees as to the narrow gauge road which was in use and active operation before and at the consolidation hereinbefore referred to and at the date of the leasing of its property by one appellee to the other?"

Under the first branch the court decided that appellants (defendants in error here) could, under the facts of the record, be "afforded no relief by the language or intendment of § 187 of the constitution." This branch of the case, therefore, needs no further consideration.

As elements in the discussion and decision of the second branch of the case, the court said that there had been no consolidation between the Gulf and Chicago Railroad Company and the Gulf and Chicago Railway Company, and if the latter company had constructed its road over the route in the direction specified in its application for incorporation, it would inevitably have been a parallel and a competing line with the narrow gauge line then in existence, and the consolidation of the roads would not have been permitted. "More than this," it was said, "an express grant of power by the legislature for the two companies to consolidate . . . would have been void, as being in contravention of the general statutory inhibition against consolidation or purchase of competing lines of railroads, which cannot, without violating § 87 of the constitution of the State, be suspended 'for the benefit of any individual or private corporation or association.'" And to sustain this proposition *Y. & M. V. Ry. Co.* v. *So. Ry. Co.*, 83 Mississippi, 746, was cited. It was deduced from § 3587 of the code of the State of 1892, that the statement in the petition that the roads were "in no way parallel or competing lines," were statements of jurisdictional facts, "upon the existence of which depended the power of the corporations to consolidate." And following *Lusby* v. *Railroad*, 73 Mississippi, 364, the court held that the Gulf and Chicago Railroad Company was without power to abandon or relocate any portion of its line, "except on the score of 'imperious necessity.'" An exception, it was said, not suggested by the facts of this record. These restraints and duties, it was further said, came to the consolidated corporation.

On the return of the case to the Chancery Court, and after a hearing on the merits, that court entered a decree making the

injunction perpetual. The decree recited that the court found "as a fact" that a valid contract existed between the Gulf and Chicago Railroad Company and the citizens of Pontotoc, which provided that the line of the railway of the company should be established and maintained where the same was established and maintained before the consolidation of that company with the other companies, and that the town had not given its assent to the abandonment of that line. The court further found "that no natural obstacles or imperious necessity prevented the said defendant companies from broadening and standardizing" the narrow gauge road "and making it a part of the main line of the proposed railroad, and no such obstacles or necessity existed to prevent the said companies from extending their said lines from the southern terminus of the said original line . . . and that the allegations of the bill have been sustained by the proof, and that the complainants are entitled to the relief prayed for." The Supreme Court affirmed the decree of the Chancery Court, repeating, with some modifications, the principles which it expressed on the first appeal of the case. It said that in a former opinion the court expressly held that "the consolidation was conditioned upon the broadening and standardizing the then existing narrow gauge railroad, and making it a part of the main line of railroad operated by the consolidated corporation." And it was alone, it was further said, upon the compliance of those conditions that the Railroad Commission consented to the consolidation, and without which the Commission would have had no power to authorize the consolidation, and without which the consolidation would not have been effected. So insistent was the condition, the court held, in view of the fact, that the roads would otherwise be parallel and competing roads, that the legislature could not relieve from it without violating § 87 of the constitution of the State.

The court expressed the law of the State to be that parallel and competing roads could not consolidate, and that other roads could only consolidate with the consent of the Railroad Commission. And it was also said that the roads recognizing

the law stated in their petition to the Commission "that their railroads were 'in no way parallel or competing lines,' and expressly pledged themselves to broaden and standardize the then existing narrow gauge railroad, and to make it a part of the main line and operated by the consolidated corporation. . . . And it is upon this ground, and this ground alone, that we now hold that the decree of the Chancellor should be affirmed." The court took pains to repeat this limitation. And, excluding other questions, the court said that it had nothing to do with the location of the depot, and that it dealt alone with the "obligation entered into" by the companies with the Commission, "that only," to quote the words of the court, "is the core of this contention and that, and *that precisely,* is what we deal with and decide in this case, to wit, that these appellants [plaintiffs in error here] are bound by their solemn obligations, deliberately entered into, as stated above, to broaden and standardize the narrow guage railroad and make it a part of the main line."

We have made these full quotations from the opinions and decrees of the state courts to clearly show what facts were found and what principles of law laid down that we might estimate the Federal questions which it is contended are involved in the case. We have seen that the Federal grounds invoked in the motion to dissolve the temporary injunction were that the injunction imposed a direct and unnecessary burden upon and was an interference with interstate commerce, and was an interference with the carrying of the United States mails. In the amended answer the same grounds were repeated with more circumstantiality and § 8, Article I, of the Constitution of the United States, was invoked.

The same grounds were practically repeated in the assignment of errors on the appeal to the Supreme Court of the State, and in addition the provision of § 10, Article I, which prohibits any State from inpairing the obligation of a contract was invoked on the ground that the decree of the Chancery Court impaired "the obligation of the contract right

to change the location of the narrow gauge road embodied in
§ 8 of the charter of the Ripley Railroad and in the articles
of organization of the Gulf and Chicago Railroad Company."

In the assignments of error in this court the plaintiffs in
error have for the first time invoked the Fourteenth Amend-
ment to the Constitution of the United States. To sustain
this assignment it is contended that the Supreme Court of the
State, by directing the consolidated company "to operate the
spur track as soon as completed, connecting the main line on
the north with the town of Pontotoc," deprives plaintiffs in error
of their property without due process of law. And a like re-
sult is produced, it is also contended, by the decision of the
court holding the "Stegall Bill," so called, to be invalid. The
latter ground will be referred to hereafter. Of the other, it is
said, it arose for the first time upon the decree and opinion of
the Supreme Court, as it is further said that the decree of the
Chancery Court did not deny the rights of the companies under
the Fourteenth Amendment. It is difficult to appreciate the
contention. The decree of the Chancery Court recited, among
other things, that no natural obstacles existed to prevent the
companies from extending their line "from the southern ter-
minus" of the original line, and enjoined the companies from
building and operating any line that "did not include or com-
prise the original line of the Gulf and Chicago Railroad Com-
pany, as originally constructed and maintained," required
them to broaden and standardize the entire line of the original
narrow gauge railroad, and to construct their line of railway in
such a way as to include as a part of the main line "all of the line
of the narrow gauge line." And it was commanded that the
work commence within thirty days and be finished within sixty
days. The Supreme Court, in its opinion, said: "In view of
the various interests here involved, we direct the appellant to
operate *the spur* track as soon as completed, connecting the
main line on the north with the town of Pontotoc." The court
therefore accepted and approved what was already done and
modified the decree of the Chancery Court in the interest of

the companies. And it besides extended the time for compliance with the decree from sixty days to six months. But aside from this, all of the contentions of the companies (except that based on the "Stegall Bill," which will be presently considered) depend upon the power of the Commission, the petition of the companies and the order of the Commission upon the petition. And these, we think, were all local questions the decisions of which we have no power to review. There is nothing in the statutes or Constitution of the United States which prevents a State from creating a board of railroad commissioners, and what powers the board shall have will depend upon the law creating them, of which the courts of the State are the absolute interpreters. Whether corporations shall remain separate or be permitted to consolidate is a matter of state regulation and provision. It is competent also for a State to prescribe the route of the railroad it creates and to provide that parallel and competing lines shall remain so. And this power was exercised by the State of Mississippi. It is not exactly clear whether this is disputed by the companies. It is, however, contended that the Commission is a mere administrative agency, and that its only real power or duty in the matter of consenting to consolidations is to determine that such consolidations are not of parallel or competing roads, and that the Commission has nothing whatever to do with the terms of the consolidation. And it is further contended that there was no agreement or contract of any kind between the companies and the Commission, that the order of the Commission was "merely an official finding that the two roads came within the necessary statutory requirements," and that the attempt of the Supreme Court to base its decision and decree upon the ground that the petition and order constituted a contract binding upon the plaintiffs in error was a "mere pretext intended to avoid the determination of the Federal questions arising in the case, and to place its decision on a non-Federal ground." We cannot assent to this view. The power of the Commission and the effect of its order were necessarily presented by the case.

They were grounds of suit. They became, therefore, the immediate and primary questions to be decided. The power of the Commission, and the effect of its order, depended upon the statutes of the State, and of them, as we have said, the Supreme Court is the absolute interpreter. The matter is exceedingly simple and is best explained by the reference to the opinion of the Supreme Court of the State. The court declared that the roads, but for their consolidation, would have been parallel and competing roads, and in order to make their consolidation—in order to give the Commission power to consent to their consolidation—the companies represented that the roads were not parallel and competing. Of course, they would not be if they were made parts of one line. And it was represented that they would be made parts of one line—to be made so by the broadening of the narrow gauge road, not by its abandonment in whole or in part. Upon this representation, upon this condition, the consent of the Commission was invoked and secured.

Much more discussion is unnecessary. It is enough to add to that which we have said, that the decree of the Supreme Court does not work an interference with or cast a direct burden upon interstate commerce. The case of the *Illinois Central R.R. Co.* v. *Illinois,* 163 U. S. 142; *Cleveland &c. Ry. Co.* v. *Illinois,* 177 U. S. 514, and *Mississippi Railroad Commission* v. *Illinois Central R. R. Co.,* 203 U. S. 335, cited by the companies to sustain their contentions, are not apposite. In those cases there was an interference with interstate trains for local purposes, though local needs had been adequately supplied. In the case at bar there is the insistence of the operation of a particular road, which the companies themselves selected or represented that they had selected. That compliance will entail expense or require the exercise of eminent domain will not make it a burden upon interstate commerce. *Wisconsin &c. R. R. Co.* v. *Jacobson,* 179 U. S. 287. Besides, the comparative expense of roads, we must assume, was considered when the petition to the Commission was made.

It is further contended by the companies that they had the right, under § 8 of the charter of the Ripley Railroad Company, to change the location of its line through the town of Pontotoc, and that the charter constitutes a contract which is impaired, it is further urged, by the laws creating the Railroad Commission, as interpreted by the Supreme Court of the State. Section 8 of the charter provides that for the purpose of making the railroad provided for in § 2, "*or repairing or changing it afterwards*," the railroad shall have rights of entering upon adjoining land, etc., upon making compensation to the owners. What power this section confers may be open to dispute. It may be said that the right of " this repairing or changing" the railroad does not give the power to abandon it. However, the Supreme Court did not pass upon the meaning of § 8. The court said if that section gave the companies the power to change the line of the narrow gauge road as they desired, they waived it, and are estopped to revoke it by their obtaining the consent of the State through its Railroad Commission to broaden and standardize that line through its entire length. This was a question for the Supreme Court to decide. It was fairly presented to the court. We cannot question the motives of its judgment; indeed we cannot say that we dissent from it. At any rate, it is not reviewable. *Eustis* v. *Bolles*, 150 U. S. 361; *Weyerhauser* v. *Minnesota*, 176 U. S. 550; *Hale* v. *Lewis*, 181 U. S. 473; *Schœfer* v. *Werling*, 188 U. S. 516.

The final contention of plaintiff in error is based on the act of the legislature of the State, called the "Stegall Bill." This act was passed after the decree of the Chancery Court, and it is contended that it is an express legislative enactment which approved the location by the Gulf and Chicago Railway Company, as consolidated, of its railway through the town of Pontotoc, and authorized a continuance of the same on condition that it should broaden and standardize the track into the old town and to the site of the old station. These conditions, it is asserted, were performed, and a contract was hence entered into between the State and the railroad company, and that the

decision of the Supreme Court, "denying the obligation of this contract, is either, (*a*) a law impairing the obligation of a contract; or (*b*) a denial to the plaintiff in error of the equal protection of the laws; or (*c*) the taking of their property without due process of law, in violation of the Fourteenth Amendment of the Constitution of the United States."

The Supreme Court decided that the bill was unconstitutional, saying: "So far as the Stegall Bill is concerned, it is perfectly obvious, as already held in the former opinion, that this special act, which was in substance for the benefit of this particular corporation, was, under the general statute laws, which we have referred to with respect to consolidation, palpably and manifestly violative of § 87 of the constitution, and plainly null and void." This conclusion is attacked, and our construction is invoked of the constitutional provision against that made by the Supreme Court of the State.

We are unable to yield to the appeal. It is only when the judgment of a state court gives effect to a law subsequent to that (or it may be a constitution), which it is alleged constitutes a contract, that we may review the judgment and decide the question of contract. And this would involve the construction of the law. But the record presents no such case. The "Stegall Bill," it is true, is claimed to be a contract, but its validity is not asserted against a subsequent law. It is asserted against prior laws and the Constitution. The decision of the court, therefore, was of that kind that a court is often called to make under the laws and constitution of its State. To assert error in the decision or even to be able to demonstrate it does not invest us with the power of review. Nor do the other supposed consequences of the decision of the Supreme Court give us jurisdiction to review it. That it denies the companies the equal protection of the law, we may say, is without any foundation. No discrimination against them is pointed out, and to say that the decision takes their property without due process of law is only another way of saying that they had a contract, the obligation of which is impaired. Of course,

they assert rights under the "Stegall Bill," but in that they present a very common case within the exclusive jurisdiction of the state court.

*Judgment affirmed.*