## LOUISVILLE & N. R. CO. v. RAILROAD COMMISSION OF ALABAMA et al.

### (Circuit Court, M. D. Alabama, N. D. October 25, 1911.)

### No. 270.

1. COURTS (§ 303*)—JURISDICTION OF FEDERAL COURTS—SUIT AGAINST STATE.

A suit by a railroad company to enjoin enforcement of an order of a state railroad commission made under authority claimed to have been conferred by statute, but alleged by complainant to be in violation of its constitutional rights, is not a suit against the state, but may be maintained in a federal court.

[Ed. Note.—For other cases. see Courts, Cent. Dig. §§ 844, 844½; Dec. Dig. § 303;* States. Cent. Dig. §§ 191, 192.

Federal jurisdiction of suits against state, see note to Tindall v. Wesley, 13 C. C. A. 165.]

2. INJUNCTION (§ 105*)—JURISDICTION.

A court of equity has jurisdiction to entertain a suit to enjoin the enforcement of an unconstitutional statute or order of a state commission, although the manner of enforcement provided for is by criminal proceedings for its violation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 178–179; Dec. Dig. § 105.*]

3. COMMERCE (§ 58*)—STATE REGULATION—CONSTITUTIONALITY.

Whether a state regulation affecting a public corporation, as a railroad company, is within the powers of the state and valid, or is invalid as beyond such powers or in violation of constitutional rights of the company, depends in the final test upon whether or not it is reasonable in view of all the circumstances.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86; Dec. Dig. § 58.*]

4. COMMERCE (§ 58*)—EMINENT DOMAIN (§ 2*)—STATE REGULATION—CONSTITUTIONALITY.

A bill alleged that complainant railroad company operated an interstate line of road to and through the city of Mobile, Ala., where it maintained a passenger station; that upon its trains it carried the mails and interstate passengers; that it transported more passengers to and from Mobile and more interstate passengers through that city than the three other roads entering the city combined, and that the number passing through was greatly in excess of the number taking or leaving its trains there; that, by an order of the Railroad Commission of Alabama, it was required to stop all of its passenger trains at a so-called union station, built by an independent local corporation, which would require all of its trains to leave its own tracks and run over the tracks of another company with heavy curves for more than a mile, entailing a delay of 40 minutes or more, or to build tracks of its own, at a cost of at least $50,000, across the yards and tracks of another company, in which case its trains would be subjected to irregular delays which would derange its time schedules; that the cost of said union station and the facilities afforded thereby were greatly in excess of the demands of the business; and that, owing to the greater number of complainant's trains and cars, it would be subjected to a greater part of the expense of maintaining said station. Held, that on such facts, admitted by demurrer, the order of the commission was an unreasonable regulation in violation of the interstate commerce clause of the Constitution, and also amounting

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to a taking of the property of complainant for public use without just compensation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 77–86; Dec. Dig. § 58;* Eminent Domain, Cent. Dig. §§ 3–12; Dec. Dig. § 2.*]

5. CONSTITUTIONAL LAW (§ 297*)—DUE PROCESS OF LAW—ORDER OF STATE RAILROAD COMMISSION.

By Loc. Acts 1903, p. 771, the Legislature of Alabama provided for the construction of a union passenger depot in the city of Mobile, the expense of building and maintaining the same to be borne equitably by all of, the railroad companies whose tracks enter the city. It required all such railroad companies to stop all their passenger trains at said station, and empowered the State Railroad Commission, in case of disagreement between the companies, to select the site and adopt plans for the same, and to prescribe the terms for its use by the companies and rules and regulations for its management and operation. Held, that such act did not confer power on the commission to make an order requiring a railroad company to use a station not built by all or any of such companies, but by a private corporation, when another of such companies was not required to use it or share in the expense of its maintenance, and that such an order made under assumed authority from the state was unconstitutional and void as in violation of the fourteenth amendment.

[Ed. Note.—For other cases, see Constitutional Law, Dec. Dig. § 297.*]

In Equity. Suit by the Louisville & Nashville Railroad Company against the Railroad Commission of Alabama and others. On demurrer to bill. Overruled.

The complainant filed this bill to enjoin the Railroad Commission of Alabama and the Attorney General of Alabama from enforcing an order made by the commission requiring complainant to stop all of its passenger trains at what is known as the "Terminal Depot" in Mobile. At the time the bill was filed, a statute was in force providing, in substance, that any common carrier could contest the validity or fairness or reasonableness of any order of the commission by instituting an action for that purpose which should be commenced by the filing of a bill or petition in the circuit or chancery court of Montgomery county or any other court therein having concurrent jurisdiction, alleging wherein the order was unfair or unreasonable, and providing for the suspension of such order and its final annulment by the judgment of the court, if the order was found to be unfair, unreasonable, or invalid, and making it the duty of the Attorney General, if the order was not obeyed within 20 days, to apply to any court of competent jurisdiction for a writ of mandamus or mandatory injunction to compel the carrier to obey and observe the order.

On the 5th of September, 1903, the Legislature passed an act (Loc. Acts 1903, p. 771):

"To locate and require the railroad companies whose railroads enter the city of Mobile to provide for the construction of a Union Passenger Depot in said city; to require them to maintain and operate the same; and to provide a penalty for a failure or refusal to comply with the provisions of this act.

"Section 1. Be it enacted by the Legislature of Alabama, that the railroad companies whose tracks enter the city of Mobile, Alabama, are hereby required to provide for the location and construction ·of an union passenger depot in said city, and commence work thereon within eight months from the passage of this act; provided, it shall be lawful for any one of said railroad companies to construct such depot, and maintain and operate the same, under the provisions of this act, in which event all railroads shall be compelled to use the same in accordance with the provisions hereof.

"Sec. 2. Said Union Depot shall be located at a convenient point in said city. It shall be adequate to accommodate the public, and have sufficient

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

trackage and shed capacity to accommodate all railroads entering said city. The plans and specifications for the construction of said depot shall be filed with the railroad commissioners of Alabama at least 60 days before actual construction begins. Said commissioners shall give public notice in some newspaper published in the city of Mobile of the filing of such plans and specifications, which shall be open to public inspection for ten days. If demand is made, a hearing shall be granted thereon. The railroad commissioners of Alabama shall have full power and authority to approve or disapprove the plans and specifications and require new plans and specifications to be submitted.

"Sec. 3. Said railroad companies, or any one of them are hereby authorized and empowered to condemn to public use any and all property necessary for the construction of said Union Depot and a right of way over any land leading thereto, necessary for track, curves, switches, and turn-outs; such condemnation to be had under the general laws of the state. They are also authorized to construct tracks upon any street included within the area named in this act; where necessary to reach the depot; and they may close any of said streets for not more than two blocks for the construction of said depot : provided, the general council of said city shall designate by ordinance what street, or streets shall be closed.

"Sec. 4. In the event any or all of said railroad companies fail or refuse to agree upon the location or plans for the construction of said depot, the railroad commissioners of Alabama shall have power and authority to and must make an order providing for the exact location, style, character, and size of building to be constructed and require said railroad companies to comply with the terms thereof. If any of the said companies offer to construct the same, the railroad commissioners of Alabama shall order them to do so.

"Sec. 5. Unless the parties agree, the Railroad Commission of Alabama shall have full power and authority to prescribe and order the terms upon which all railroads entering said city shall use said depot, including the reasonable charge for such use. The commissioners shall have power to prescribe all rules and regulations it may deem necessary or proper for the maintenance and operation of the depot.

"Sec. 6. All railroads entering the city of Mobile are required to stop all their passenger trains in said Union Depot for the embarkation and debarkation of passengers, provided such railroads as cannot reach the depot over their own tracks, shall have the privilege of running over the tracks of another railroad, the terms, conditions and compensation therefor to be determined by the railroad commissioners.

"Sec. 7. If any, either or all of said railroad companies fail, refuse or neglect to comply with the provisions of this act, or any order of the commission made pursuant to the provisions hereof, it or they shall be deemed guilty of a violation of the provisions of this act and shall incur a penalty, and must be fined not less than one thousand or more than $2,000.00 each, for each and every month such failure, refusal or neglect continues, and such company or companies may be indicted for any number of months in the same or separate indictments, when a charge is preferred by any resident taxpayer of the city of Mobile. The city court of Mobile shall have jurisdiction in all cases arising under this act; one-half of all fines recovered shall be paid to the state and one-half shall be paid to the city. Execution shall issue upon such judgment against any property of the defendant in the county, and be collected as in other cases.

"Sec. 8. Proof of the order of the Railroad Commission of Alabama, and a failure to construct the depot shall constitute a prima facie violation of the provisions of this act.

"Sec. 9. All laws and parts of laws in conflict with the provisions of this act are hereby expressly repealed."

The Railroad Commission of Alabama made an order on the 2d of July, 1907. requiring complainant within 90 days from that date to receive and discharge passengers at the Gulf Terminal Station in the city of Mobile on all of its trains handling passengers, but did not require the Mobile, Jackson & Kansas City Railroad Company, one of the roads whose tracks enter the city of Mobile to enter the depot. The bill attacks the order, and alleges

that it is invalid and unreasonable because it seeks to require the joint use, maintenance, and operation of the said station by only a part of the railroads entering the city of Mobile; that it interferes with and attempts to regulate interstate commerce; that it denies to the complainant due process and the equal protection of the laws, in violation of the fourteenth amendment; that the location of said depot was not provided for by any of the railroad companies entering the city of Mobile, and that the Union Station is not constructed or maintained by the roads or any one of them, but by a private corporation. The bill alleges, further, that the said railroads whose tracks enter Mobile city failed to jointly provide the location or construction of a union depot, but that a private corporation was organized under the general laws of Alabama under the style of the Gulf Terminal Company, and it, with the approval of the Railroad Commission, constructed the depot upon the property of the Southern Railroad Company in said city. The bill then proceeds to give a lengthy history of the Louisville & Nashville Railroad Company and the acquisition of its roads in and through the city of Mobile, and shows that it operates as a common carrier lines of railroad in and through the states of Kentucky, Tennessee, Louisiana, Mississippi, Alabama, Georgia, Virginia, Florida, North Carolina, Indiana. Illinois, Missouri, and Ohio. "In operating its railroad as a common carrier of interstate commerce it operates continuous passenger trains from the city of Cincinnati in the state of Ohio, through the states of Kentucky, Tennessee, Alabama, Mississippi and Louisiana to the city of New Orleans, in the state of Louisiana, and from the city of New Orleans, over the same route, and through the same states, to the city of Cincinnati, and by connections with other roads it receives and transports over the said trains passengers traveling between many other points and various towns, cities and stations along the line of the Louisville & Nashville Railroad, and in operating said portion of its railroad all of its passenger trains pass through the city of Mobile in the state of Alabama."

The bill further alleges that a portion of its road is a land grant road, and that an act of Congress provides that the United States mail shall at all times be transported over the said railroad under the direction of the Post Office Department for such price as Congress may by law direct. It further alleges that the carrying of the mail over its lines has been arranged by the Post Master General under sections 3997. 3998, 4001. Rev. St. U. S. (U. S. Comp. St. 1901, pp. 2717–2719). It is further alleged in the bill that the "Louisville & Nashville Railroad Company is, and has for many years been, daily operating its said lines of railroad between the city of Montgomery, through the city of Mobile and the city of New Orleans, and transporting thereover the mails of the United States and many interstate passengers, the destination of some of whom was and is Mobile, Ala., and the destination of others were and are points beyond said city. Its line of railroad enters the city of Mobile at what is known as One Mile creek, and continues in a practically straight line down Commerce street in the city of Mobile to its passenger depot, at the intersection of Government street, and thence southwardly along Commerce street for a short distance, and thence in a southwesterly direction to Water street, and thence along Water street to a point below Texas street, thence in a southwesterly direction through the corporate limits of said city. Its passenger depot is, and has for a long time been, situate near the intersection of Commerce and Government streets, and its roundhouse and machine shops are situate on Water street south of Charleston street. Mobile is one of the termini of complainant's Mobile & Montgomery Division, and also of complainant's New Orleans & Mobile Division of railroad, and in the transportation of passengers and mail to Mobile and from Mobile complainant's engines are and have for a long time been changed at this passenger depot." It is further alleged that the city of Mobile is entered by four railroads—the Mobile & Ohio Railroad and the Southern Railway, which are practically under one ownership, the Mobile, Jackson & Kansas City Railroad, and the Louisville & Nashville Railroad. The said Mobile & Ohio Railroad and the Southern Railway have their yards and depots in the extreme northern portion of the city, and about 2,000 feet west of the line of the Louisville & Nashville Railroad Company, and about two miles distant from the passenger depot and nearest point on the line of the

Mobile, Jackson & Kansas City Railroad Company. Complainant, the Louisville & Nashville Railroad Company, transports to and from the city of Mobile more passengers than the other roads combined, and likewise transports through the city of Mobile more interstate passengers than said other roads combined.

The bill further alleges that the Union Depot is constructed at a distance of about 2,000 feet from complainant's line of railroad in the city of Mobile, and at a distance of more than a mile from complainant's roundhouse and shops, and at a distance of about two miles from the passenger station and nearest point to the railroad track of the Mobile, Jackson & Kansas City Railroad Company. Said depot is so located that the complainant, the Louisville & Nashville Railroad Company, cannot reach the same upon its own track, and could reach said depot in only one of two ways, viz.: Its north-bound trains would have to leave its main line at the intersection of Commerce and Lipscomb street and pass over one of the tracks of the Southern Railway on a 16°30' curve and enter upon Beauregard street, and after crossing several tracks of other roads, including two tracks passing to and from the roundhouse, leave Beauregard street by an 18° curve and reach a track on the outside of said depot, only one side of which said track would be protected by the eaves of the station, that it would then back over the same track and around the same curves to the intersection of Commerce and Lipscomb streets, where it left when it left its own line to reach said depot. This would require it to diverge from its main line a distance of about 2,800 feet, and require it to traverse about 5,600 feet in entering and departing from said depot. Its south-bound trains would be obliged to leave its main track at the same point and back over the same line, and over the same track of the Southern Railway Company and around the same curves to the same point, and would cause a delay to each of such trains of between 30 and 40 minutes. Complainant frequently has two or more passenger trains at its depot at the same time, and, in that event, one of such passenger trains would have to enter the station sheds over the same route, and this would involve its departing from its track an additional distance of 1,000 feet, or 2,000 additional feet to enter and leave the station, and this would occupy an additional time of, at least, five minutes. Or the Louisville & Nashville Railroad Company could construct a track from a point on its main line north of One Mile creek with heavy curves. Said track would have to pass through the yards of the Mobile & Ohio and Southern Railway and over a number of their tracks, a distance of 4,000 feet on a fill of from 4 to 6 feet high and a trestle of about 50 feet long, and at a cost of exceeding $50,000. Owing to the necessity of passing over the tracks of the other roads, the time consumed in entering and leaving said depot would not be uniform and the schedule of its trains would thereby be disturbed and made irregular. Complainant's passenger trains entering Mobile are long and heavy, and its engines are large, and the use of the heavy curves required in entering said depot, and over tracks of other roads, would be dangerous, and result in a great wear and tear upon the tracks, and upon complainant's engines and cars.

It is further alleged that "the city of Mobile is the terminus of the Mobile & Ohio Railroad, the Southern Railway, and the Mobile, Jackson & Kansas City Railroad, and most of the passengers who reach the city on either of said roads are local passengers. There is a very small number of passengers interchanged between complainant, the Louisville & Nashville Railroad Company, and said several other roads at Mobile, and, except for these passengers, the use of said depot by complainant would not add to the convenience of the traveling public. The said so-called Union Depot, constructed by the Gulf Terminal Company, as aforesaid, was constructed at an expense of $600,000, and upon a scale disproportionately large to the passenger business to be done therein, even if all the railroads entering the city of Mobile entered said depot. The said Gulf Terminal Company issued bonds for said sum of $600,000 to construct said depot, and, in addition thereto, the cost and expense of operating said depot will be about $1,000 a month, making the total expense of operating said depot of exceeding $6,000 per month. Where

a depot is used in common by several railroads, the usual method of apportioning the expense is upon the basis of the number of cars entering and leaving said depot. The number of passenger cars transported by complainant through the city of Mobile is more than all of the passenger cars of the other roads which enter the city of Mobile combined, and, as its cars would be counted for the purpose of apportioning between the several roads the expense of operating said depot, complainant would be chargeable with about two-thirds of the expense of maintaining and operating said depot, although the management and control thereof would be in the hands of the said Gulf Terminal Company, and although so entering said depot would add to the convenience of but a very small part of the passengers, and greatly delay, and thereby inconvenience, very much the larger portion of the passengers upon its trains entering said depot. The proportion of the expense of maintaining and operating said station would be unreasonable and unfair and disproportionate to the benefits it derived therefrom, and to the convenience of that portion of its passengers who would be benefited thereby."

It is further alleged "that said order does not require the Mobile, Jackson & Kansas City Railroad to enter said station," but "seeks to require the joint use, maintenance and operation of said station by only a part of the railroads entering the city of Mobile," and that "said order seeks to compel complainant to use the passenger station which is under the management and control of an independent private corporation," and that "said order seeks to require complainant's passenger trains to leave its line of road and pass over tracks of other railroads, over unreasonably heavy curves, and across tracks of such railroads, in going to and coming from said station, or else construct a track at great expense over and across the tracks and through the yards of other railroads, and, in addition, passing over the tracks of other roads, over heavy curves, and cross over tracks of other railroads, numerous connecting branches of side tracks in almost constant use, and across tracks in constant use, at a material risk of injury to property and danger to the lives and limbs of persons." The bill then alleges that, "under the seventh paragraph of said act of the Legislature requiring the several railroads to construct the Union Passenger Station, complainant will, unless it obeys said order, incur a penalty, and may be fined not less than $1,000 nor more than $2,000 for each and every month such failure, refusal, or neglect continues, and may be indicted for any number of months in the same or separate indictment, when a charge is preferred by any resident taxpayer of the city of Mobile, and that, if said order of the Railroad Commission of Alabama remain in force during the pendency of this cause, complainant will either be compelled to obey said order at a great expense and an irreparable loss, damage, and injury, as hereinabove shown, or else be subject to indictment or indictments for each month during which it fails to receive and deliver passengers in said station, and, until and unless said order is suspended or decreed to be invalid by this honorable court, complainant will be fined in the sum of $2,000 for each month that it failed to enter said station. Complainant is advised, for the several reasons hereinabove set out as grounds of contest of said order, the said order is invalid, unfair, and unreasonable, and, under such advice, it does not intend to deliver and receive passengers at said Gulf Terminal Station at Mobile until this cause and the contest herein made shall have been finally determined, and the validity, fairness, and reasonableness of said order adjudicated."

The bill prayed that on final hearing the order of the Railroad Commission be decreed to be unfair, unreasonable, invalid, null, and void, and that the Attorney General and the Railroad Commission be specifically enjoined from taking any steps to execute the order by civil suit or criminal prosecution.

The grounds of demurrer were numerous, but they resolve themselves into the objection that the court has no jurisdiction because the proceeding is in effect a suit against the state, that the bill is without equity, and that it shows that complainant has not been deprived of its property without due process of law, or denied the equal protection of the laws, and that the order complained of is a valid and lawful order.

Gregory L. Smith, H. L. Stone, and Geo. W. Jones, for complainant. R. C. Brickell, Atty. Gen., and Pillans, Hanaw & Pillans, for defendants.

JONES, District Judge (after stating the facts as above). The bill was filed many months since by the Louisville & Nashville Railroad Company against the Attorney General and the Railroad Commission of Alabama to enjoin the enforcement of an order of the commission regarding the entrance of its passenger trains into a union passenger depot in the city of Mobile. At one time a decree pro confesso was taken for want of an answer, which was subsequently set aside. Then the bill was amended at different times to meet changes in the personnel of the Railroad Commission. Counsel on both sides were engaged in the rate litigation complainant and other railroads were waging against the Railroad Commission, and for that reason the case was passed from term to term by consent, and now comes on to be heard on the demurrers to the original bill as amended.

The general right of a state to compel railroads entering a city or town to receive and deliver passengers at a union or common depot, very properly, is not questioned in this case. The state may so direct by a statute giving specific regulations covering the whole matter, or leave the question and its details to the determination of an administrative body or commission. When the matter is left to the determination of a commission, and it does not depart from the authority given it by the statute, or where the Legislature acts directly upon the subject, the courts, in the absence of a statute providing for a judicial review of such order, have no power to interfere with the enforcement of an order of that kind, unless its necessary effect, in view of the particular situation with which it deals, operates the deprivation of some right given or secured by the state or federal Constitutions.

[1, 2] The demurrer challenges the jurisdiction of a court of equity to enjoin criminal proceedings or qui tam actions, or to entertain the proceeding here, because it is, in reality, a suit against the state. That the proceeding is not a suit against the state and that a court of equity should entertain such a suit and grant the relief prayed in a proper case has been put beyond the pale of controversy, adversely to defendants, by the decisions of this court and of the Supreme Court. Louisville & Nashville Railroad Co. v. Railroad Commission of Alabama (C. C.) 157 Fed. 944; Ex parte Young, 209 U. S. 123, 28 Sup. Ct. 441, 52 L. Ed. 714, 13 L. R. A. (N. S.) 932. The other demurrers question the right of complainant, upon the facts stated in the bill, to protection either under the interstate commerce clause of the Constitution of the United States or under the due process clause, or under the clause vesting in Congress exclusive jurisdiction over the mails. Each of these constitutional provisions operates as a limitation upon what would otherwise be an undoubted attribute of state power. The right of complainant to protection against the order by virtue of one or another of these provisions of the Constitution of the United States is dependent upon the same principles, and the demurrers will be considered together.

[3] The well-recognized powers of a state are, first, the right under its police power to do anything reasonably necessary for the preservation of the health, safety, morals, or the general welfare of the people; and, second, to regulate public corporations, such as railroads, who have dedicated their property to public use, as the reasonable requirements of the public convenience may dictate. The limitations of the power of the state in this respect are well stated in Wisconsin Railroad, Co. v. Jacobson, 179 U. S. 296, 301, 21 Sup. Ct. 115, 118, 45 L. Ed. 194, where it is said:

"If power were granted by the Legislature, and it amounted in the particular case simply to a fair, reasonable, and appropriate regulation of the business of the corporation, when considered with regard to the interests both of the company and of the public, the legislation would be valid, and would furnish, therefore, ample authority for the courts to enforce it. * * * The reasonableness of the judgment with reference to the facts concerning each case must be a material, if not a controlling, factor upon the question of its validity. A statute or a regulation provided for therein is frequently valid, or the reverse, according, as the fact may be, whether it is a reasonable or unreasonable exercise of legislative power over the subject-matter involved. And in many cases questions of degree are the controlling ones by which to determine the validity, or the reverse, of legislative action."

In Atlantic Coast Line v. Wharton, 207 U. S. 334, 28 Sup. Ct. 121, 52 L. Ed. 230, and in Mississippi Railroad Commission v. Illinois Central Railroad, 203 U. S. 235, 27 Sup. Ct. 90, 51 L. Ed. 209, these principles were applied to questions of interference with interstate commerce; while in Atlantic Coast Line R. R. Co. v. North Carolina Corporation Commission, 206 U. S. 6, 27 Sup. Ct. 585, 51 L. Ed. 933, and in Missouri Pac. Ry. v. Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472, the principle is applied to the due process clause of the Constitution of the United States.

In Atlantic Coast Line v. Wharton, supra, it is said:

"That any exercise of state authority, in whatever form manifested, which directly regulates interstate commerce, is repugnant to the commerce clause of the Constitution, is obvious. It hence arises that any command of a state, whether made directly or through the instrumentality of a railroad commission, which orders, or the necessary effect of which is to order, the stopping of an interstate train at a named station or stations, if it directly regulates interstate commerce, is void. * * * When, therefore, an order made under state authority to stop an interstate train is assailed because of its repugnancy to the interstate commerce clause, the question whether such regulation is void as a direct regulation of such commerce may be tested by considering the nature of the order, the character of the interstate train to which it applies, and its necessary and direct effect upon the operation of such train. But the effect of the order as a direct regulation of interstate commerce may also be tested by considering the adequacy of the local facilities existing at the station or stations at which the interstate train has been commanded to stop."

The right which the state undertakes to exercise in the present case is its inherent right to regulate public carriers for the promotion of the public convenience, and does not involve the exercise of the state's police power. In Herndon v. Chicago, Rock Island & Pacific Ry., 218 U. S. 135, 30 Sup. Ct. 633, 54 L. Ed. 970, where an effort was made to require a railroad to stop its trains at a certain junction point, the Supreme Court observed:

"It is to be remembered that this statute is not of that class passed in the exercise of the police power of the state for the promotion of the public safety and requiring the stoppage of trains by one railroad before crossing the tracks of another railroad. This statute, as its second section shows, was passed for the purpose of providing greater facilities of travel and not for the protection of life and limb."

On the other hand, in Southern Railway v. King, 217 U. S. 533, 30 Sup. Ct. 594, 54 L. Ed. 868, the statute under discussion required railroads to slow down their trains when approaching a crossing, and it was held that the statute was enacted by the state in the exercise of its police power.

Under these authorities, whether the action of the state be in the exercise of its power to regulate public corporations, or in the exercise of its police power, and regardless of whether the action complained of was taken directly or through a commission, and irrespective of whether the action is complained of as a direct interference with interstate commerce, or as the taking of property without just compensation (except in cases like those cited in Mo. Pac. Ry. Co. v. Kansas, 216 U. S. 262, 30 Sup. Ct. 330, 54 L. Ed. 472, and in Mobile, Jackson & K. C. R. R. Co. v. Mississippi, 210 U. S. 187, 28 Sup. Ct. 650, 52 L. Ed. 1016, where the thing required to be done is that the corporation comply with the terms of its charter or franchise), the final test of the validity or invalidity of the order necessarily turns upon the consideration whether, in view of all the circumstances, it is reasonable or unreasonable.

When the thing required is the furnishing of facilities, such as stopping a train at a given point, or making connections with another railroad, the fact that reasonable facilities have already been furnished . is sufficient in itself to render the order unreasonable, and therefore invalid as a direct interference with interstate commerce, as well as denying to the complainant due process of law. But an order may be unreasonable in itself, in view of the situation it seeks to control, even where the facilities furnished are wholly insufficient. In Atlantic Coast Line v. Wharton it is said:

"When therefore, an order made under state authority to stop an interstate train is assailed because of its repugnancy to the interstate commerce clause, the question whether such order is void as a direct regulation of such commerce may be tested by considering the nature of the order, the character of the interstate commerce train to which it applies, and its necessary and direct effect upon the operation of such train. But the effect of the order as a direct regulation of interstate commerce may also be tested by considering the adequacy of the local facilities existing at the station or stations at which the interstate commerce train has been commanded to stop." ·

It is a just construction of this bill that complainant did not have adequate or sufficient facilities for its passengers at the time the order was made. Hence arose the power of the state to compel it to furnish reasonable facilities, but the lack of such facilities does not give rise to any power to compel the carrier to furnish unreasonable or excessive facilities, or to subject it to arbitrary, unreasonable, and onerous burdens in doing so.

[4] The demurrer admits that the complainant operates as a common carrier between the cities of Cincinnati and New Orleans, and

over intervening states and through intervening cities; that, in addition to that, it forms part of a line of transportation to and from many other portions of the United States; that it operates through the city of Mobile more passenger trains than the aggregate of all of the passenger trains operated by the other three railroads entering the city; that it transports more passengers than do the other three roads combined; that it is under contract to and does transport the mails of the United States; that much the larger portion of the passengers upon its trains in the city of Mobile are passengers whose destination is beyond that city; that there is but little exchange of passengers between complainant and the other roads entering the city of Mobile arising out of the fact that each of the other roads terminate in the city of Mobile and transport to said city but few passengers whose destination is beyond said city; that the effect of the order requiring complainant to stop all of its passenger trains at the Gulf Terminal Depot would be to delay each of its trains from 35 to 45 minutes, and that it would also require complainant to operate its trains over the track of the Southern Railway Company and around two difficult and dangerous curves; that part of these trains would in going in and coming out of the depot have to be operated an additional distance of 5,600 feet, while the other of its trains would have to be operated an additional distance of 7,600 feet, or else complainant would be obliged to construct a track of its own through a part of the city of Mobile at an expense of at least $50,000, and that such track would have to cross the yards of the Mobile & Ohio Railroad Company, and its trains in crossing these yards would be subject to irregular delays, which would render its schedules irregular and uncertain. If this be the situation with which the order deals, and the demurrer admits that it is, the operation of the order would delay the United States mails and greatly inconvenience and delay a majority of the passengers served by complainant's road, and would add to the convenience of but very few of them, and would create an unreasonable and unnecessary expense in the operation of the trains and in the maintenance of the depot.

The demurrer further admits that complainant's railroad enters the city of Mobile at One Mile creek, and continues in practically a straight line down Commerce street to Government street, where its passenger depot is situated; that it there changes its engines and proceeds to New Orleans; that its roundhouse is south of its depot. Conceding, as must be done, that complainant at the time the original bill was filed did not maintain adequate facilities, the fact that the order of the Railroad Commission disarranges the schedules of the complainant, requires it to leave its line for a mile or more, and delays and inconveniences the majority of its passengers and adds a heavy expense to reach the depot, and burdens complainant with the maintenance of facilities greatly in excess of the demands of its business, renders the order in and of itself an unreasonable regulation, and, under the influence of the authorities cited, the order must be held to be violative of the interstate commerce clause of the Constitution, and amounting

also to a taking of the property of the complainant for public use without just compensation within the meaning of the 14th amendment.

[5] Pretermitting the above objections to the order, it is plainly illegal and void on other grounds. It is very properly conceded by counsel that the sole authority of the commission to make the order here in question is derived from the provisions of the local act, set forth in the statement of facts, approved September 5, 1903, which act displaced, as to Mobile, the general authority of the commission to direct railroads to provide union stations for passengers in other places. The commission has no authority except as given by this local act to compel or regulate the construction of a union passenger depot at Mobile, and, in whatever particular its order departs from the authority given by the statute, its action to that extent is in excess of the power conferred and therefore void. It is apparent from even a casual reading of the statute that the Legislature intended to provide for the construction and maintenance of a union passenger depot by all the "railroad companies whose tracks enter the city of Mobile," and that all of them should share equitably in the expense of constructing and operating such union depot. The language of the statute, (section 6) is mandatory:

"All railroads entering the city of Mobile are required to stop all of their passenger trains in said Union Depot for the embarkation and debarkation of passengers."

The entire authority granted the commission is to make orders, regarding a union depot to be constructed and maintained by "all the railroads entering said city," that may be "pursuant to the provisions (of this act) hereof." It is upon this ground, as the court is informed, that the city court of Mobile, when the complainant was indicted for not complying with the order, directed a verdict of not guilty, when it was shown that the Union Station in Mobile was not constructed or maintained by all or any of the railroads, but by a private corporation, although it was built upon the property of the Southern Railway Company.

If it be conceded that the local act requiring all the railroads entering the city to join in the construction and maintenance of a union depot in view of their relative situations as disclosed by the bill and map of the city, was not unreasonable or arbitrary, in the light of the principles by which such action must be tested as set forth in the decisions cited above, and a valid exercise of legislative power, it cannot help or support the order made by the commission in this case. The Legislature itself defines the class upon all of whom the statute must operate. That class is "all the railroads entering the city of Mobile," and it gave no authority whatever to the commission to exempt any railroad from the operation of the statute or to place the burden of complying with its order upon any less number of the railroads than the act itself designated. The burden of sharing in the construction and expense of maintaining the Union Station equitably was placed by the lawmaking power upon all four railroads. The order of the commission places the burden on three only, in repudiation of the mandatory command of the Legislature that all of

them should share in the burden of constructing and maintaining the Union Station. The effect of the order of the commission was to confer benefits on some of the class and impose burdens upon others of the class when the lawmaking power had declared that all of them were situated alike with respect to the duty, and should fare alike— none receiving benefits or sharing burdens which were not conferred or imposed impartially upon all of the class. Conceding that the Legislature itself might have passed a statute for a union depot in Mobile which did not include all the railroads entering the city, yet, when it refused to do so and put all the railroads in the same class the commission had no authority to classify them differently or to exercise any discretion whatever in that regard.

The commission in making its order, however, was an administrative instrumentality of the state, and exercised its authority. The prohibitions of the fourteenth amendment against deprivation of property without due process or a denial to any person of the equal protection of the laws operate upon all of the instrumentalities of the state. As such acts are those of public bodies clothed with state power, they are, within the meaning of the 14th amendment, the acts of the state. The order here made amounts to a denial to complainant by authority of the state of the right to the equal protection of the laws, and is therefore invalid and void, and by an unbroken array of authorities its execution must be enjoined, if the Constitution of the United States or equivalent provisions in our state Constitution are to be observed. Chicago, Burlington & K. C. R. R. v. Chicago, 166 U. S. 227, 17 Sup. Ct. 581, 41 L. Ed. 979; Yick Wo v. Hopkins, 118 U. S. 356, 6 Sup. Ct. 1064, 30 L. Ed. 220; Ex parte Virginia, 100 U. S. 339, 25 L. Ed. 676; Railroad Companies v. Morris, 65 Ala. 199; Joseph v. Randolph, 71 Ala. 506, 46 Am. Rep. 347; Smith v. Railroad Co., 75 Ala. 455; Gulf, etc., Railroad v. Ellis, 165 U. S. 154, 17 Sup. Ct. 255, 41 L. Ed. 666; Atchison Ry., etc., v. Matthews, 174 U. S. 104, 19 Sup. Ct. 609, 43 L. Ed. 909; Missouri v. Lewis, 101 U. S. 22, 25 L. Ed. 989.

The demurrers are overruled, and the respondents have 40 days in which to answer.