## FELTON v. ACKERMAN.

### (Circuit Court of Appeals, Sixth Circuit. April 3, 1894.)

#### No. 139.

1. RECEIVER—APPEAL FROM INJUNCTION.

A receiver appealed from an order of the court by which he had been appointed, granted upon intervening petition, and restraining him from obstructing a road which the court found to have been improperly vacated. *Held,* that the appeal was consonant with the relation which ought to exist between the receiver and the court, as the petition and answer were in the nature of an adversary proceeding in which the receiver represented the interest of the owner of the property of which he was temporarily in charge.

2. SAME—INJUNCTION OF PUBLIC NUISANCE.

If, upon intervening petition, it be shown that a receiver has been guilty of a public nuisance, such as the erection of a fence across a highway, it is the duty of the court to order its discontinuance, although the public character of the nuisance would prevent the petitioner from maintaining a suit thereon for injunction.

3. SAME—VACATION OF ROAD.

A receiver has no lawful right to obstruct a road which has been vacated by a road commissioner upon petition of certain persons said to be resident along and in the vicinity of the road, where there has been a failure to comply with the provision of the statute (Act Tenn. 1891, p. 1) in relation to notice, viewers, and waiver of damages.

Appeal from the Circuit Court of the United States for the Southern Division of the Eastern District of Tennessee.

This was an intervening petition by Leo Ackerman against Samuel M. Felton, receiver of the Cincinnati, New Orleans & Texas Pacific Railway Company, seeking to enjoin him from continuing to obstruct a crossing. An injunction was granted by the circuit court, and the receiver appealed.

Harmon, Colston, Goldsmith & Hoadly and Lewis Shepherd, for appellant.

W. G. M. Thomas, for appellee.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

TAFT, Circuit Judge. Leo Ackerman, the appellee, filed an intervening petition, in a case now pending in the circuit court of the United States for the eastern district of Tennessee, wherein Samuel Felton, the appellant, had been appointed receiver of the Cincinnati, New Orleans & Texas Pacific Railway, the lessee of the railroad known as the Cincinnati Southern Railway, built and owned by the city of Cincinnati, connecting Cincinnati and Chattanooga.

The petition averred that the petitioner was a butcher in Chattanooga, and owned and used in his business 17 acres of land, with a slaughterhouse on it, situate on Shallow Ford road, several miles from Chattanooga; that this road was his only means of reaching Chattanooga from his slaughterhouse; that 1,200 feet from his property, and between it and Chattanooga, the right of way of the Cincinnati Southern Railway crossed the Shallow Ford road; that

ever since the building of the railway, there has been a crossing at the intersection, over which it was necessary for petitioner to drive, in order to reach Chattanooga, but that Felton, as receiver of said railway property, had, within a few days previous to the filing of the petition, unlawfully and without right, built a fence over the Shallow Ford road, and closed the crossing. Petitioner prayed that the receiver might be enjoined from continuing the obstruction. The receiver answered, alleging that the Shallow Ford road had been duly closed, at the railway crossing, by the road commissioner of. the district, as provided by law, and that he was not obstructing any highway by continuing his railway fence over what had been, but what was not now, Shallow Ford road. The court below found that the road had not been properly vacated according to law, and granted the order prayed for. This is an appeal from that order by the receiver.

The first question suggested is, whether it is consonant with the relations which ought to exist between a receiver and the court appointing him, that he should be allowed to appeal from an order of the kind made here. We think it is. The learned judge at the circuit allowed the appeal, and we see no reason why he should not have done so. While it is true that the receiver is an arm of the court in the administration of the property, yet, where persons intervene to obtain relief against him, because they cannot obtain full relief in any other forum, the issue raised by his answer to the petition makes the proceeding an adversary one, in which the receiver represents the interests of the owners of the property, of which he is temporarily in charge. If, as such representative, he feels. aggrieved by an order of the court made in an adversary proceeding of this character, it is difficult to see why he should not be permitted to have the order of the court reviewed by the appellate tribunal to which any other litigant may resort. Certainly, the owners of the property, if aggrieved by the order against the receiver, might appeal, and there would seem to be no justice in preventing the temporary custodian of their property from doing so. As between parties to the action claiming an interest to the property which he is preserving, of course the receiver can take no part; but where the appeal is in the interest of the property, and therefore in the interest of all who shall thereafter be shown to have any right to the property, it is quite convenient and proper that the receiver should be allowed to conduct the appellate proceeding.

It is first objected to the order granted below that the injury to Ackerman, as shown by the proof, was of the same character as that suffered by the public, and that there was no peculiar damage to him, different from that which the public suffered in the obstruction of the highway, which should enable him to bring suit, on his own account, to recover damages for the obstruction, or to enjoin its continuance. The peculiar damage which he sets up in his petition is the damage to him as a butcher by reason of the fact that he cannot reach Chattanooga by any other road than the Shallow Ford road, closed by the receiver. It is made perfectly plain by reference to the plat and by affidavits on file in the case, that the only effect of

closing the Shallow Ford road upon Ackerman's route from his property on the Shallow Ford road to Chattanooga, is to require that he shall pass down on the east side of the Cincinnati Southern Railway for about 200 yards to Harrison avenue, a road parallel to the Shallow Ford road, and there cross the railroad, instead of crossing the railroad by the Shallow Ford road, and then passing down on the west side of the railroad to Harrison avenue, and thence into Chattanooga. Harrison avenue is the main road into Chattanooga from the vicinity of Ackerman's slaughterhouse. It does not appear that the route on the east side of the railroad is any more circuitous than that on the west, and, even if it did, the authorities are quite clear to the point that such a damage is not one which can be remedied by private action. It is a damage which the public share with the particular complainant. Farrelly v. Cincinnati, 2 Disn. 516; Hubert v. Groves, 1 Esp. 148; Wilkes v. Hungerford Market Co., 2 Bing. (N. C.) 281; Holman v. Inhabitants of Townsend, 13 Metc. (Mass.) 297; Smith v. City of Boston, 7 Cush. 254; Baxter v. Turnpike Co., 22 Vt. 114.

In Lowery v. Petree, 8 Lea, 678, Judge Freeman remarked:

"No person can maintain an action for a common nuisance where the injury or damage is common to all. Some special damage to the plaintiff must be averred and proven, and for this damage alone, he can sue and be compensated."

The reason why one person cannot sue for damages or an injunction to abate the obstruction of a road when the injury is shared by the complainant with the rest of the public is that, otherwise, the courts and the trespasser would be burdened by a multiplicity of suits. The law, therefore, requires that what is a public injury, shall be redressed by some person, entitled to represent the public. One remedy is by indictment of the wrongdoer and abatement of the nuisance. Another remedy is that the public prosecutor shall file a bill on behalf of the public for an injunction. Wood, Nuis. 938.

In the present case, however, we are of the opinion that the principle relied on, cannot aid the appellant. He is the receiver of the federal court; and, while it is true that this is an adversary proceeding, as already stated, he does not lose his character as an officer of the court, with all the consequences as to directness of remedy against him which this relation makes necessary. Section 2 of the act of August 13, 1888, defining the jurisdiction of the circuit courts of the United States, provides that whenever, in any cause pending in any court of the United States, there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner, that the owner or possessor thereof would be bound to do, if in possession thereof. And then follows a provision for punishment of any receiver who shall violate the foregoing requirement. If Ackerman, by his petition and his proof, shows that the receiver has been guilty of a public nuisance in erecting a fence across the highway in the administration of the trust, it is the duty of the court to make an order

enjoining him from doing so, even though, in an independent action, Ackerman, as an individual, may not be able to obtain such relief. It is of the greatest importance that receivers of the federal courts shall not be violators of the state laws; and wherever a court is made to know, in any proper way, that its receiver is violating the law of the state in which is the property, of which he has charge, the court must sua sponte direct him to cease further violation. We cannot, therefore, on any technical rules of procedure, however well established as between private litigants, sustain this appeal, and reverse the order below, if it appears that the receiver's act, enjoined by the order of the court appealed from, was a violation of public right.

We are thus brought to the question whether the receiver had any lawful right to close the Shallow Ford crossing. Forty-seven persons, said to be residents and owners of property along and in the vicinity of this railway crossing, petitioned the road commissioner of the district in writing that the road be closed and abolished at the crossing. The road commissioner, on this petition, and without further proceeding, made an order that the crossing be closed, and that the railway companies whose rights of way were crossed—that is, the Western & Atlantic Railroad and the Cincinnati Southern Railway—were authorized to close the same. Was the action of the road commissioner authorized by law? This depends on the proper construction of the Tennessee road act of 1891, to be found on the first page of the Acts of Tennessee for that year. It is quite embarrassing for a federal court to attempt to construe a measure, so peculiarly local in its nature as a county-road law, in advance of the supreme court of the state whose act it is. We have been referred to no decision of the supreme court of Tennessee in which this law has been under review, and we derive little light in respect to the construction of this law from the few decisions there are, upon previous laws. The act of 1891 is a compilation, revision, and amendment of all previous road laws of the state. It inaugurates a new system. The power over county roads is transferred from the immediate control of the county court to road commissioners. The second section of the act requires the county court to divide the county into one or more road districts, and provides for the election of one road commissioner for each district, every two years. Section 5 provides that each commissioner shall have control of the highways and bridges in his district, and shall have general supervision of the overseers or contractors thereof, and shall direct the manner of working the roads in his district. Section 6 permits him to make contracts not in excess of the road fund, assigned to his district for the year. Section 10 requires each commissioner to keep, in a book provided for the purpose, a correct record of all his official transactions, and to make a full and complete report of the same to the judge of the county court in December of each year. Section 14 is as follows:

"That all applications to open, change or close a road shall be made by written petition, signed by the applicant, to the commissioner of the district through which the road runs, or is asked to be located, specifying in particular

the changes or action asked, or if the road extends into two or more districts, or is the dividing line between, districts, then to the commissioners of said districts; but no road shall be opened, changed or closed without giving at least five days' notice to all parties interested of the time said road or roads are to be opened, changed or closed, and a surveyor or civil engineer may be employed if necessary to locate the same. Land owners and those controlling land touched by the proposed highway shall be deemed interested parties; if any owner of the land so concerned is a nonresident, then notice to his agent or attorney, if any such agent or attorney resides in the county, shall be sufficient. If there be no such agent or attorney, then the notice shall be made by publication for four (4) consecutive weeks in the newspaper having the greatest circulation in the county, the last publication to be at least one (1) week before the hearing. Where the opening, changing or closing of a public highway only affects one commissioner's district, the said commissioner shall associate with himself two other freeholders of said district whom he has never consulted upon the question involved, and who shall be in no way related to the parties affected by such change, closing or opening of said highway, and who shall take and subscribe to an oath before said commissioner to act without favor or partiality in the matter, whose oath thus subscribed shall become part of the record, upon appeal being taken, and the said commissioner and two freeholders shall constitute a jury of view, and said jury shall have the power of condemnation and to assess damages, which shall be paid out of the general funds raised for county purposes, upon the order of the commissioner on the county judge or chairman of the county court, who shall issue his warrant therefor if he approves the same. Any person or persons considering themselves aggrieved by the action of the jury of view may appeal to the next quarterly county court, and from there to the circuit and supreme courts. In case of an appeal the jury of view shall forward all the papers in the case, with their action on the same, to the said quarterly court appealed to. All costs accruing in said suit shall be paid by the appellant, if the action of the jury of view is sustained by the court giving final decision, unless for good reason it should otherwise order. Should such case be decided against the jury of view, then all costs and any additional damages assessed by the court shall be paid out of the general fund raised for the current county purposes. If the action of the jury of view be affirmed the commissioner or commissioners shall then proceed as if no appeal had been taken; if otherwise the order of the court shall be carried out. All persons appealing from the decision of a jury of view to any court having jurisdiction of the matter shall execute a bond for the costs of the suit. In case of an appeal the district attorney general shall attend the case for the county in the circuit court, and shall be paid the sum of five dollars for each case attended and the attorney general for the state shall represent the county in such cases before the supreme court. The jury of view shall receive one dollar per day for their services, which, with other costs and damages accruing upon the opening, closing or changing of roads, shall be paid out of the general county funds upon the order of the commissioner upon the judge or chairman of the county court, upon which he shall issue his warrant, subject always to his approval. Whenever land owners and those controlling land touched by the highway proposed to be changed, closed or opened shall waive in writing any claim for damages sustained hereby then the commissioner or commissioners shall proceed independently of a jury of view, to execute the particular action asked in the petition, if in their discretion they think the public interests shall not be materially injured thereby. The commissioner may without petition or application, proceed to open, close, change, and construct any public highway which he may deem to be necessary for the public interests. Where any two road districts are involved in any question requiring the jury of view the two commissioners and one freeholder shall constitute said jury, and where three or more districts are involved then the commissioners of all the districts interested shall constitute the same and no commissioner shall be required to take an oath before serving on such jury of view."

Section 29 provides that any person or persons who shall obstruct any public highway, or render it inconvenient or hurtful to the

traveling public, or who may encroach upon the same in constructing any fence, wall, or like improvement, shall be guilty of a misdemeanor, and fined as in the case of other misdemeanors.

An examination of section 14 shows the legislative plan for the opening, changing, or closing of roads to be—First, a petition; second, five days' notice to the interested parties as defined by the statute; third, a hearing before the commissioner and two disinterested freeholders, in which the character of the change to be made either by opening, altering, or closing is determined upon, the necessary land for the new part of the road is condemned, and the damages accruing to interested parties for the taking of the new land and the removal or change of the old road are fixed. If all the interested parties waive damages in writing, the road commissioner may proceed without viewers. But until there is such a waiver, it seems to us that the commissioner has not jurisdiction to act without the assistance of viewers. The viewers are called in, not only to estimate damages, but to condemn land, and to act generally upon the petition. They are to assist the commissioner in deciding whether it is to the public interest to expend the money necessary to acquire the land for the new road or to reimburse interested parties for loss, by reason of a removal of the old. They are to protect the taxpayer as well as the interested and injured abutter. It is only when damages are waived in writing that their services are to be dispensed with. Then the public cannot be burdened with damages, and the private landowner needs no tribunal to assess the extent of his injury. The law also provides that a petition is not necessary to invoke the action of the commissioner, or to give him jurisdiction. He may open, change, or close any public highway in his discretion when he deems it for the public interest. But this does not dispense with the necessity for notice to interested parties, or for viewers to make condemnation, and assess the damages. It does not do away with the necessity for a hearing before final action can be taken. We cannot presume, without express words in the law, that, when the commissioner is to act without petition, all the other safeguards to the interested parties and the public, provided when a petition is filed, are to be taken away.

In the case at bar, there was nothing but a petition. Such interested parties as there may have been had neither notice nor hearing. There was no waiver in writing of damages by interested parties. It is unnecessary for us to decide who were interested parties under the law. Conceding that they were limited to those whose property abutted on the changed part of the road, the change here consisted of closing the crossing, and opening the road down to the Harrison avenue crossing. The interested parties were the two railroad companies and the owners of the land taken to make the new connection between the Shallow Ford road and Harrison avenue. There is no waiver of damages in writing by either railroad company or by the landowners along the new connecting road. Until that was filed, no valid change could be effected without viewers. The proclamation and order of the road

commissioner on the simple filing of the petition was unauthorized and void, and the order of the court below to enjoin the appellant from proceeding to act under it, was right. The order of injunction is affirmed.