# Railroad Commission of Alabama v. Alabama Great Southern R. R. Co., et al.

## Mandamus.

(Decided June 30, 1913. Rehearing denied December 18, 1913. 64 South. 13.)

1. *Constitutional Law; Statute; Invalidity; Burden.*—One asserting that a statute is contrary to the Constitution has the burden of establishing its invalidity beyond a reasonable doubt.

2. *Same; Presumption.*—All doubts are resolved in favor of the constitutionality of a statute.

3. *Same; Construction.*—Constitutions are enacted for practical purposes, and will be construed so as to carry out the manifest intention of the maker. ·

4. *Same; Delegation of Power; Legislative Authority.*—All laws are carried into execution by and through officers, some with more and some with less powers, but all must be clothed with ·power for the effectual enforcement of the laws.

[Railroad Commission of Alabama v. Ala. Great Sou. R. R. Co., et al.]

5. *Same.*—Section 5545, Code 1907, is not an unwarranted delegation of authority, the Railroad Commission being an arm of the state, which puts the law into effect when applicable.

6. *Corporations; Receiver; Appointment.*—The appointment of a receiver for a corporation does not dissolve the corporation.

7. *Statutes; Construction; In Pari Materia.*—Statutes which are in pari materia will be construed together.

8. *Same; Penal Statute.*—Penal statutes should be strictly construed but not in such a way as to defeat the obvious intention of the law making power.

9. *Same; Remedial Statute.*—Remedial statutes should receive enlightened and liberal construction.

10. *Receivers; Action Against; Leave to Sue.*—Under U. S. Compiled Statutes, 1901, p. 509, a receiver appointed by the Federal Court may be made a party defendant without leave from the court appointing him, to a proceeding instituted by the Railroad Commission to compel him to unite with other railroad companies in providing and maintaining a union station at a given point, touched by the railroad of which he is the receiver.

11. *Railroads; State Regulation; Orders of Commissioner.*—Where a board is created for the purpose of carrying a law into effect, all legal intendments are with the orders of such board, and such orders will be upheld unless their invalidity is shown; hence, an order of the Railroad Commission requiring certain railroad companies to provide a union station issued under the provisions of section 5545, Code 1907, must be presumed to be equivalent to a finding by the Commission that the necessity of the traveling public demanded a conveniently located union passenger station there.

12. *Same; Passenger Station.*—The power of eminent domain conferred by law upon railroad companies will enable them to acquire the necessary land at a fair price whereon to establish and locate a union passenger station, hence it cannot be urged as a defense to an order issued by the Railroad Commission requiring several railroad companies to establish such a station, that neither the order nor the petition showed that such companies had it in their power to comply with the order by obtaining the necessary land.

13. *Same; Order.*—An order of the railroad commission issued under the provisions of section 5545, Code 1907, requiring certain railroad companies already maintaining separate stations to unite and erect and acquire a union station, is not void as placing an unreasonable burden on the railroad by compelling them to abandon the stations already erected and in use.

14. *Same.*—An order of the Railroad Commission made in virtue of such section 5545, Code 1907, requiring railroad companies to unite to provide a union station at a given locality, will be upheld, unless it appears from the face of the record or from extrinsic evidence to be unreasonable and unjust.

15. *Same.*—Such an order is not void because it does not fix the exact spot upon which the station is to be built.

16. *Same.*—Such an order is not void nor invalid because not requiring the station to be erected according to the plans and specifications furnished by the commission.

[Railroad Commission of Alabama v. Ala. Great Sou. R. R. Co., et al.]

17. *Same; Policy of State.*—It is not the policy of this state to place the safety and convenience of the traveling public solely within the arbitrary control of the railroad companies, nor is it the policy of the state to give the Railroad Commission an uncontrolled dominion over the railroads operating in this state.

18. *Same; Statute.*—Although under its authority, the Railroad Commission may compel railroad companies to purchase property, section 5545, Code 1907, is not thereby rendered unconstitutional.

19. *Same.*—Viewed in the light of the provisions of section 5547, Code 1907, it must be held that the provisions of section 5545, Code 1907, are applicable to a receiver of an insolvent railroad corporation, and that he may be compelled to join with other railroad companies in providing for a union station.

20. *Same; Receivers; Federal Appointment; Statutes.*—Where the Federal Court has appointed a receiver of a railroad company whose line extends within this state, such receiver is bound to comply with the order of the Railroad Commission made under·section 5545, Code 1907, requiring him to join with other railroad companies in the erection of and the maintenance of a union depot, since United States Compiled Statutes, 1901, p. 508, require such receiver to manage and operate the property according to the requirement of the valid laws of this state, and this latter statute is remedial.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Mandamus by the Railroad Commission of Alabama, against the Alabama Great Southern Railroad Company, and other railroads, to compel them to unite in building and maintaining a union passenger station as required by certain orders issued by the commission. From a judgment denying the writ relator appeals. Reversed and remanded.

R. C. BRICKELL, Attorney General, T. H. SEAY, Assistant Attorney General, and ESTES, JONES & WELSH, for appellant.. The order was made under the authority of section 5545, Code 1907, and when construed in the light of the provisions of section 5507, Code 1907, includes receivers. This is evidenced by the railroad legislation and the Constitution of this state. Statutes in pari materia must be construed together.—*Mueller v. Mueller*, 28 South. 465; 15 Pac. 139; 14 B. Monroe 215; 26 A. & E. Enc. of Law, 620; *Lehman-D. Co. v. Robin-*

*son,* 59 Ala. 219; *Crawford v. Tyson,* 46 Ala. 299; *Barr, et al. v. Weaver,* 31 South. 488. It was proper to join the receivers with the other railroad companies as was done in this case.—Sec. 243, Constitution 1901; *Horton v. So. Ry. Co.,* 55 South. 531; 54 N. W. 243; U. S. Comp. Statutes of 1901, p. 509. The failure to procure an order before joining the receiver did not rob the commission of the jurisdiction to make the order.—177 U. S. 584; 61 Fed. 225; 177 U. S. 305. The statute is not rendered invalid because it required the railroad company to acquire land for the site for the station.—*Speed v. Cooke,* 57 Ala. 209; 64 S. E. 16. The order is not void because it requires the different railroads to abandon their several separate depots.—33 Cyc. 143, et seq., and authorities cited. The authority of a legislature to give such power to the railroad commission is settled adversely to the contention made by the railroad companies.—*N. C. & St. L. v. State,* 137 Ala. 439; 25 A. & E. of Law, 660; 33 Cyc. 133.

A. G. & E. D. SMITH, J. T. STOKELEY, TILLMAN, BRADLEY & MORROW, and E. L. ALL, for appellee. Counsel insist first that the commission was without authority to join the receivers of the A. B. & A. Railroad Company without the consent of the Federal Court appointing such receivers.—134 S. W. 273; 81 Fed. 529; 135 Fed. 707; 59 Fed. 523; 189 Fed. 82; 61 Fed. 731; 91 N. E. 19. The provisions of section 5545, Code 1907, are without application to receivers of railroad companies. —*U. S. v. Harris,* 177 U. S. 305; 5 Wheat. 75; 2 Wheat. 119. In construing a penal statute, the intention of the Legislature must be found in the language used.— *Grooms v. Hannon,* 59 Ala. 510; *Jarrett v. McCabe,* 75 Ala. 325; 106 Ala. 203; 120 Ala. 616; 125 Ala. 491; 4 Ala. App. 377; 137 Ala. 395. The order is unreason-

able in requiring the companies to abandon their several depots and acquire property on which to construct the joint depot.—206 U. S. 1; 40 South. 263; section 243, Constitution 1901. The commission has no right or authority to add anything to the statute.—137 Ala. 439; 129 Ala. 232; 40 South. 875; 40 South. 263.

DE GRAFFENRIED, J.—We quote the following propositions which in our opinion exert a controlling influence upon the questions presented by this record:

A. "Whenever the validity of an act is challenged upon the ground that it is unconstitutional, the objector assumes the burden of showing that it is an exercise of authority not legislative in its nature, or that it is inconsistent with some other provision of the Constitution. In cases of doubtful construction, the doubt should be resolved in favor of the constitutionality of the act."—State v. McCarty, 5 Ala. App. 212, 59 South. 543; Ingram v. State, 39 Ala. 247; 84 Am. Dec. 782; Dorman v. State, 34 Ala. 216; Whaley v. State, 168 Ala. 152; 52 South. 941, 30 L. R. A. (N. S.) 499; Railroad Commission of Ala. v. Northern Ala. Ry. Co., 182 Ala. 357, 62 South. 749; George T. Simpson, et al. v. David C. Shepard, George T. Simpson v. Emma B. Kennedy, et al., and George T. Simpson v. William Shillaber, 230 U. S. 352, 33 Sup. Ct. 729 L. Ed. 1511.

B. "Constitutions were made for practical purposes, and not for the exercise of critical gymnastics; they should be construed so as to carry out the intention of the lawmakers, which should be reasonable rather than absurd."—State v. Thompson, 142 Ala. 98, 38 South. 679; State v. McCarty, supra.

C. "All laws are carried into execution by means of officers appointed for that purpose; some with more, others with less, but all must be clothed with power suf-

ficient for the effectual execution of the laws to be enforced."—*Georgia R. R. Co. v. Smith,* 70 Ga. 694; *Georgia Banking Co. v. Smith,* 128 U. S. 174, 9 Sup. Ct. 47, 32 L. Ed. 377; *Railroad Commission of Alabama v. Northern Ala. Ry., supra; State v. McCarty, supra; State Highway Commission v. Jefferson County,* 183 Ala. 663, 63 South. 83.

D. The appointment of a receiver for a corporation does not dissolve the corporation.—Cook on Corporations (6th Ed.) § 871; *Green v. Walkill Nat. Bank,* 7 Hun (N. Y.) 63.

E. When a board is created for the purpose of carrying a law into execution, all legal intendments are with the orders of such board, and such orders will be upheld unless their invalidity is shown by those who complain of such orders. The legal presumption is that such orders are reasonable; that they were made upon proper evidence; and that they are valid. It is only when such orders were unauthorized by the law or were made by such board *without* or in *excess of* legal authority, or were unreasonable, that they are void.— *Railroad Commission of Ala. v. Northern Ala. Ry. Co., supra; State Highway Commission v. Jefferson County, supra; State v. McCarty, supra; Whaley v. State, supra.*

1. In this case the Railroad Commission made an order requiring the Alabama Great Southern Railroad Company, the Louisville & Nashville Railroad Company, the St. Louis & San Francisco Railroad Company, and the Atlanta, Birmingham & Atlantic Railroad Company, and S. L. Schoonmaker and H. M. Atkinson, receivers of said Atlanta, Birmingham & Atlantic Railroad Company, to procure sufficient grounds within a certain special territory in the city of Bessemer for a union passenger station for said railroads and upon such ground to erect, within a given period, for the use

of said roads, at said city, a union passenger station. The order was made on February 5, 1912, and required said parties to "proceed to the procurement of sufficient grounds within the boundaries above set out, and proceed with the construction of an adequate passenger station thereon, to be used jointly by the above set out railroad companies, and that work on the construction of said building shall commence within ninety (90) days, and shall be completed within six (6) months."

The above order of the Railroad Commission was made pursuant to section 5545 of the Code of 1907, which is as follows: "Any two or more railroads which enter any city or town may be required, when practicable, or when the necessities of the case in the judgment of the Railroad Commission demand it, to have and maintain one common or union passenger station for the security, accommodation, and convenience of the traveling public, and to unite in the joint undertaking and expense of erecting, constructing, and maintaining such union passenger station commensurate with the business and revenue of such railroad companies or corporations, on such terms, regulations, provisions, and conditions as the Railroad Commission may prescribe; and any company failing to comply with the orders of the Railroad Commission shall be liable to a penalty of not less than one thousand nor more than ten thousand dollars, for every six months in default, to be recovered by the state."

Under the above provision of the Code we presume that the Railroad Commission, before making the above order, informed itself as to the necessities of the situation, and we accept the order as tantamount to a declaration that the reasonable necessities of the traveling public demand a conveniently located union pas-

[Railroad Commission of Alabama v. Ala. Great Sou. R. R. Co., et al.]

senger station in the city of Bessemer, to be used by the named railroad companies for the reception and discharge of their passengers at that point, and that the building of such station will not amount to an unreasonable burden upon the railroad companies, taking into consideration the volume of their passenger business at that point and the cost, to the railroads, of such union passenger station. In other words, we accept, in the present state of the record, the making of the order by the Railroad Commission, as a finding by the Railroad Commission, that the situation at Bessemer is such as to justify the making of the order. See above subdivision E of this opinion, and the authorities there cited.

2. It is argued by the railroad companies that the above order is void because it does not appear from the order or the petition for mandamus that the companies have it within their power to comply with the order, in that it does not appear that they own or can obtain at reasonable figures sufficient land within the prescribed limits upon which to build the union passenger station.

Unless the contrary is clearly shown, we will presume not only that the place prescribed is suitable, but that sufficient ground can be obtained, either by private purchase, or by condemnation proceedings, at reasonable figures, for such station. Through the power of eminent domain which the law has conferred upon the railroad companies, they possess all the power which is necessary to acquire the needed lands at their fair value, and, under the present state of the record, we must presume that the Railroad Commission has placed no unreasonable burden upon the railroad companies in so far as the acquisition of the needed ground for the station is concerned. See above subdivision E of this opinion, and authorities cited.

3. It is also contended by the railroad companies that "the order of the Railroad Commission is void in that the order of the Railroad Commission requires each railroad company to abandon presently occupied depot facilities in the city of Bessemer, and to build, in conjunction with others, a union depot, whereas the act authorizing the Railroad Commission to require the construction of a union depot does not authorize the Commission to compel the abandonment of depot and depot facilities already erected and in use." This argument was, of course, applicable to the facts presented by the record in *Railroad Commission of Alabama v. Northern Alabama Railway Company, supra,* but in that case this court held that it is competent, when the reasonable necessities of the public require it, and the needed improvement will not place an unreasonable burden upon the railroads, for the Railroad Commission to order two or more railroads maintaining separate passenger stations in the same city or town to unite in one passenger station. Conditions which a few years ago were amply sufficient to meet the public needs are now found to be altogether inadequate, and in this day, when quick transportation is a necessity, the public demands better and more convenient passenger stations than were formerly needed, and the statute which we have above quoted was passed to meet this new nesessity of the public. It is out of respect to the reasonable public needs, and the power of the state to require those who serve the public to meet such reasonable needs, that statutes similar to the one now under consideration have in other states been held to be violative of no principle of constitutional law.—*Mayor and Aldermen of Worcester, et al. v. Norwich & Worcester Railroad Company, et al.,* 109 Mass. 103; *Corporation Commission v. Railroad,* 139 N. C. 126, 51 S. E.

793; *Industrial Siding Case,* 140 N. C. 239, 52 S. E. 941; *Dewey v. R. R. Co.,* 142 N. C. 392, 55 S. E. 292; *Griffin v. R. R. Co.,* 150 N. C. 312, 64 S. E. 16.

4. Authorized as we are, in this state of the record, to presume that the Railroad Commission, when it made the order complained of, had by personal investigation on the part of its members, and by other proper evidence, arrived at the just conclusion that the city of Bessemer has reached that stage in its growth and development when the public travel to and from that city renders the location and maintenance of a union passenger station at that point a not unreasonable burden upon the named railroads, and that the passenger stations of said railroads at said city are so located, with reference to each other, that the necessities of the traveling public require that said railroads shall receive and discharge their passengers at the same point, the Railroad Commission, under the authority conferred upon it by the laws of this state, certainly had the authority to order said railroads to unite in one passenger station at said city.—*Railroad Commission of Alabama v. Northern Ala. Ry. Co., supra.*

It is not the policy of the state to place the safety and covenience of the traveling public solely within the arbitrary control of those who manage railroad companies, nor is it the policy of the state to place the manner in which railroads shall conduct themselves, in the conduct of their business, in the uncontrolled discretion or judgment of the Railroad Commission. When, however, the Railroad Commission makes an order which is within the purview of the powers which the Legislature has conferred upon the Commission, when this body of men selected, presumably, for its intelligence and fitness, and charged by the law with the performance of its duties, makes an order in furtherance of the law

of the state which it is required to administer with equal justice to *all* interests, then, unless there is something on the face of the record, or evidence aliunde the record, showing the illegality or the unreasonableness or injustice of the order, the order will be upheld. See subdivision E of this opinion, and authorities there cited.

Under the opinion of this court in *Railroad Commission of Alabama v. Northern Alabama Railway Company, supra, there* is therefore but one question going to the validity of the order of the Commission, in the instant case, on *constitutional grounds,* left for our consideration, and that is whether so much of said section 5545 of the Code of 1907 as authorizes the Railroad Commission to require two or more railroads to *jointly* purchase or condemn lands for a union depot and to jointly erect a union depot thereon is within the power of the Legislature.

The question as to whether the Railroad Commission can compel two or more railroads to jointly purchase or condemn lands needed for a union depot, and to construct thereon a union passenger station, was left, in the above case, an open one; but in that case there is an intimation that the court was inclined to the opinion that the Commission possessed such power, and that this court would probably so hold when the question was properly presented. In that case this court said, "We do not mean to hold, however, that any part of said section 5545 is unconstitutional or that the Commission cannot compel a joint construction and ownership of a union depot," and cited, in that connection, the case of *State v. M. & St. L. R. Co.,* 80 Minn. 191, 83 N. W. 60, 89 Am. St. Rep. 514; s. c., 186 U. S. 257, 22 Sup. Ct. 900, 46 L. Ed. 1151. While the Supreme Court of the United States did not in the above case, in terms

determine this question, the entire argument of the court in that case, in support of the conclusions to which it actually arrived, is strongly persuasive that the court was of the opinion that the states possess the power which, in this case, the Railroad Commission has seen fit to exercise. In that case the court said: "It is insisted that it is beyond the constitutional power of the Legislature to compel companies to enter into involuntary, unreasonable, and unprofitable contracts with other companies at the instance of third parties, or to fix terms and conditions upon which such contracts shall be performed. This argument in its various applications is one which has been addressed to and considered by this court in nearly every case in which the power of the state to regulate railway charges has been called in question, and the answer made to it in those cases is equally pertinent here. Indeed, it is impossible for the state to exercise this power of regulation without interfering to some extent with the power of a railway to contract either with its customers or connecting lines. The power is one which was said in *Munn v. Illinois*, 94 U. S. 113 [24 L. Ed. 77], to have been customarily exercised in England from time immemorial, and in this country from its first colonization, for the regulation of ferries, common carriers, hackmen, bakers, millers, wharfingers, and innkeepers; and the whole object of this class of legislation is to curtail the power to contract by limiting the exactions of those engaged in these occupations and providing that the rendition of such services shall not raise an implied promise to pay more than a certain fixed sum. This legislation may be justified by the fact that these various occupations are necessarily to a certain extent monopolistic in their nature, and that in dealing with customers the parties do not stand upon an equality;

the latter being practically compelled to submit to such terms as the former may choose to exact, unless the state shall, acting in the interest of the public, elect to interfere and prescribe a maximum of charges."

The above opinion of the Supreme Court of the United States was delivered in a case which was appealed from the Supreme Court of Minnesota, and in this same case the Supreme Court of Minnesota said: "If the state is to have any voice, therefore, in the establishment of reasonable rates, it must have a voice in some degree and some manner in the business of the carrier. Where a single carrier is being dealt with, this can be accomplished by determining what the operating expenses ought reasonably to be; the reasonable value of the capital invested; what return, under all the circumstances of the case, would be fair; and then, by adjusting the rate, an economical management is secured. But in a case like the one at bar, where each may plead its inability to make the necessary agreement with the other, the state must have the power to arbitrate between them and, within proper limitations, compel the acceptance of its award. If the state is powerless to decide as between carriers, we have, as said by counsel for the commission, the following absurdity, namely: '(a) The state may regulate rates; (b) the rate must be reasonable; (c) it must afford the carrier compensation over and above operating expenses; (b) the method of operating and consequent expenses is beyond the state control.' But this question has heretofore been considered and disposed of in this state adversely to defendant's contention in *Jacobson v. Wisconsin, M. & Pac. R. Co.,* 71 Minn. 519, 74 N. W. 893 [40 L. R. A. 389, 70 Am. St. Rep. 358], now in the United States Supreme Court on a writ of error. It was there held that the act of 1895 did not, under the facts

of that case, contravene the federal or the state Constitution when conferring upon the Commission the power to compel the transfer and interchange of loaded cars, and the making of joint rates for through shipments, where the haul was in part on one, and in part on the other, of two connecting roads. There are no facts here which take this case out of the operation of the rule thus established, and we must abide by it as perfectly legitimate, until the federal court declares that an error has been committed. We hold, therefore, that Laws 1895, c. 91, violates no provision of the state or federal Constitution, and under it the Railroad and Warehouse Commission of this state has the power to compel the enforcement of joint through rates between points within this state by the connecting carriers affected by the order."—*State ex rel. R. & W. C. v. Minneapolis & St. L. R. Co.*, 80 Minn. 191, 196-197, 83 N. W. 60, 62 (89 Am. St. Rep. 514). See further, on this subject, *Wisconsin, Minnesota & Pac. R. R. v. Jacobson*, 179 U. S. 287, 21 Sup. Ct. 115, 45 L. Ed. 194; *Jacobson v. Wisconsin, M. & Pac. R. Co.*, 71 Minn. 519, 74 N. W. 893, 40 L. R. A. 389, 70 Am. St. Rep. 358.

On the 5th day of September, 1903, the Legislature passed an act (Local Acts 1903, p. 771) entitled "An act, to locate and require the railroad companies whose railroads enter the city of Mobile to provide for the construction of an union passenger depot," etc. The act required the railroad companies, whose tracks enter the city of Mobile, to provide for the *location* and *construction* of a union passenger station in said city and to commence work thereon within eight months. The act also authorized said railroad companies or any one or more of them to condemn to public use all lands necessary to the construction of said depot and also all lands needed for rights of way into and out of said de-

pot. It also lodged in the Railroad Commission full authority to enforce the provisions of the act. The act clearly contemplated that, if the railroad companies did not themselves, by a voluntary, joint arrangement, acquire the needed lands and construct the station, the Railroad Commission should have the authority to require such railroad companies, if that was necessary, to jointly purchase or, by condemnation proceedings, to jointly acquire the needed lands and to jointly construct the station in accordance with the plans and specifications to be furnished by such Commission. Speaking of this act, Jones, District Judge, in *Louisville & Nashville Railroad Co. v. Railroad Commission of Alabama* (C. C.) 191 Fed. 757, said: "The general right of a state to compel a railroad entering a city or town to receive and deliver passengers at a union or common depot very properly is not questioned in this case. The state may so direct by a statute giving specific regulations covering the whole matter, or leave the question and its details to the determination of an administrative body or commission." In another place in the opinion in this case, Judge Jones says: "The right which the state undertakes to exercise in the present case is its inherent right to regulate public carriers for the promotion of the public convenience." Of course the power to which we refer must be, taking into consideration the necessities of the situation and the public interests to be subserved, reasonably exercised, but the state possesses, under the state and federal Constitutions, all needed authority to so regulate public service corporations as to meet all the reasonable requirements of public convenience.—*L. & N. R. Co. v. Railroad Commission* (C. C.) 191 Fed. 757.

It would, however, create a strange anomaly for the courts to hold that a state has the authority to require

[Railroad Commission of Alabama v. Ala. Great Sou. R. R. Co., et al.]

all railroad companies operating railroads within a city, whenever the reasonable needs of the traveling public are such as to demand a union passenger station at that point, to use a union passenger station in said city, and at the same time deny to the state the power to require such companies to jointly acquire, by purchase or by condemnation proceedings, sufficient land upon which to maintain the building and to jointly construct the necessary building. The two positions are inconsistent and cannot coexist. If the state has the power to which we have referred, and that power seems to be conceded, then it has the corresponding authority to put that power into exercise. In fact, we conceive of no more equitable basis for the apportionment of the expense in the construction of such a building and in the acquirement of sufficient lands therefor than the apportionment of the total cost among the railroad companies, based upon the relative amount of the passenger traffic of each respective railroad company at the particular point. Such an apportionment treats each railroad company with exact fairness and determines the exact extent of the ownership of each railroad in the joint property. Neither are we able to discover a fairer basis for the apportionment of the cost of maintaining such a station than that which is fixed by the actual amount of the yearly use, by each railroad, of such station, viz., the wheelage basis.

It seems to us, therefore, that the Legislature had the constitutional power to vest in the Railroad Commission the authority which it conferred upon it in the above-quoted section 5545 of the Code of 1907, and that no part of said section is violative of any clause of the state or federal Constitution.—*State v. McCarty, supra; Whaley v. State, supra; Ingram v. State, supra; Dorman v. State, supra; Railroad Commission v. Northern*

24—185

*Ala. Ry. Co., supra; George T. Simpson, et al. v. David C. Shepard, George T. Simpson v. Emma B. Kennedy, et al.,* and *George T. Simpson v. William Shillaber, supra; State v. Thompson, supra; Georgia Railroad Co. v. Smith, supra; Georgia Banking Co. v. Smith, supra; State Highway Commission v. Jefferson County, supra; Mayor, etc., of Worcester v. Norwich & Worcester Railroad Company, supra; Corporation Commission v. Railroad, supra; Industrial Siding Case, supra; Dewey v. Railroad Co., supra; Griffin v. Railroad Co., supra; State ex rel. v. Minneapolis & St. L. R. Co., supra; Wisconsin, Minnesota & Pac. R. R. Co. v. Jacobson, supra; Jacobson v. Wisconsin, M. & Pac. R. Co., supra; L. & N. R. R. Co. v. Railroad Commission, supra.*

Said section 5545, it is true, says the Commission shall possess the authority to make such order "when practicable or when the the *necessities of the case in the judgment of the Railroad Commission demands it."* The words which we have italicized in the quoted portion of section 5545 must be read in the light of the decisions of this court which existed at the time the statute was enacted, and, when so read, those words do not place the matter of making such orders within the arbitrary and uncontrollable judgment of the Commission. Those words, when so read, require that the judgment of the Commission shall be reasonable, and when so read offend no provision of the state or federal Constitution. When such an order is made, however, the presumption is that the order was reasonable unless the contrary is shown either by the record itself or by evidence aliunde.—Authorities, supra.

5. In the present case the order of the Railroad Commission was as follows: "In the above cause, the defendant railroads, having failed to report to the Commission of any agreement as to location or the propor-

tionate cost to each for such location, or for the cost of construction, operation, and maintenance thereof, as provided in a supplemental order of this Commission, dated October 2, 1911, the Commission of this date, after having given notice to the defendant railroads, proceeded to fix the location of said station and apportion the proportionate cost to each defendant railroad in the location and construction of the building, and the operation and maintenance thereof, as follows: The location of said station to be between Alabama avenue and Second avenue, and Nineteenth street and the Louisville & Nashville Railroad. The proportionate part of each, in cost of site and construction, shall be proportioned to the receipts of each from passenger business, based upon passenger receipts for the past 12 months. The proportionate cost of operation and maintenance shall be on a wheelage basis. Therefore it is hereby ordered that the said Alabama Great Southern Railroad Company, the Louisville & Nashville Railroad Company, the Southern Railway Company, the Atlanta, Birmingham & Atlantic Railroad Company, and S. L. Schoonmaker and H. M. Atkinson, receivers, *or either of them,* proceed to the procurement of sufficient grounds within the boundaries above set out, and proceed with the construction of an adequate passenger station thereon, to be used jointly by the above set out railroad companies, and that work on the construction of said building shall commence within ninety (90) days, and shall be completed within six (6) months."

Schoonmaker and Atkinson are the receivers of the Atlanta, Birmingham & Atlantic Railroad Company, and we direct attention to the fact that said Atlanta, Birmingham & Atlantic Railroad Company is made *a party* to this proceeding *as well as* its said receivers. The first section of the above-quoted order shows plain-

ly that this *proceeding was directed* against *"the defendant railroads,"* and that Schoonmaker and Atkinson were brought into the case simply because of their relation to one of the *defendant* railroad companies as its receivers. The order which we have quoted was made because "the *defendant railroads,* having failed to report to the Commission of any agreement as to location or the proportionate cost to each for such location, or for the cost of construction, operation, and maintenance thereof," and for no *other* reason. In other words, this entire proceeding, from its inception, shows that the Railroad Commission had in mind, at all times, and was proceeding against, at all times, the railroads which maintain depots for the reception and discharge of passengers at Bessemer, and that the names of Schoonmaker and Atkinson, as receivers, were brought into this proceeding because it is through them, as such receivers, that the particular railroad is now being operated. We deem it well, also, at this point to say that the words *"or either of them,"* which we have italicized in the above-quoted order, where they appear, evidently refer to Schoonmaker and Atkinson *only.* The order, as we understand it, is an order operating jointly upon all the railroad companies, and the words "and S. L. Schoonmaker and H. M. Atkinson, receivers, *or either of them,"* simply mean that the Railroad Commission ordered that *Schoonmaker and Atkinson, or either one of them,* should, on the part of the railroad of which they were receivers, comply with the order.

It is contended by appellees, and in this contention they seem to have been upheld by the court below, that said section 5545 of the Code is highly penal, and that, as said section 5545 does not in *terms* include *receivers of railroads* within its provisions, the order requiring the Atlanta, Birmingham & Atlantic Railroad Compa-

ny and Atkinson and Schoonmaker, its receivers, to join in the acquisition of the land needed for the station, and to join in the construction of the union passenger station, is void, and that therefore the order of the Commission requiring the construction of the station by appellees is altogether invalid.

In order that the contention of appellees on this subject may be well understood, we quote the following from one of the briefs of counsel for appellees: "This order of the Railroad Commission attempts to put this burden upon the receivers of the Atlanta, Birmingham & Atlantic Railroad, regardless of the statute, and absolutely ignoring the words and terms of the statute. This statute cannot be extended or stretched by the Railroad Commission of the state, or by the courts of the state, so as to include the receivers in the order. In fact, the very principle for which we contend, in this case, on this point, has been decided by the Supreme Court of the United States.—*U. S. v. Harris,* 177 U. S. 305, 20 Sup. Ct. 609, 44 L. Ed. 780. In that case the court had under consideration the construction of sections 4386, 4387, 4388, and 4389 of the Revised Statutes (U. S. Comp. St. 1901, pp. 2995-2997). These statutes impose certain penalties upon any company, owner, or custodian of cattle who fails to feed, water, and rest the cattle as provided by the statutes. The questions arose as to whether or not the satutes included receivers. Receivers are not mentioned in the statutes, and the court held that inasmuch as the statutes are penal, and receivers are not specially mentioned, the courts could not stretch the statutes and by implication include receivers. This case is a very thorough discussion of the subject and quotes at some length from the opinion of Chief Justice Marshall in the case of *U. S. v. Wiltberger,* 5 Wheat. 76, 5 L. Ed. 37."

The opinion of the Supreme Court of the United States in *U. S. v. Harris,* above cited, expresses the views of this court as to the manner in which penal statutes should be construed. In that case the court held, and we think properly, that a receiver could not be held to the payment of a penalty under the terms of an act which provided, *for its violation,* only a penalty against a *railroad company.* The court, however, pointed out that the construction which was placed upon the act did not defeat the purpose of the act, even when a railroad is in the hands of a receiver, for, said the court, "it does not, therefore, follow that the statute in question would be without operation where railroads are in the hands of receivers. The owners and custodians of the stock would still remain subject to the punishment prescribed." in concluding its opinion in said case, the court reaffirmed, as the true rule which should always govern the construction of penal statutes, the following, taken from the language of Chief Justice Marshall in *United States v. Wiltberger,* 5 Wheat. 76, 5 L. Ed. 37: "The rule that penal laws are to be construed strictly is perhaps not much less old than construction itself. It is founded on the tenderness of the law for the rights of individuals and on the plain principle that the power of punishment is vested in the legislative, and not in the judicial, department. It is the Legislature, not the court, which is to define a crime and ordain its punishment. It is said that, notwithstanding this rule, the intention of the lawmaker must govern in the construction of penal as well as other statutes. \* \* \* But this is not a new independent rule which subverts the old. It is a modification of the ancient maxim and amounts to this: That, though penal laws are to be construed strictly, they are not to be construed so strictly, as to defeat the obvious intention of the Legislature.

The maxim is not to be so applied as to narrow the words of the statute to the exclusion of cases which those words, in their ordinary acceptation, or in that sense in which the Legislature has obviously used them, would comprehend. The intention of the Legislature is to be collected from the words they employ. Where there is no ambiguity in the words, there is no room for construction. The case must be a strong one, indeed, which would justify a court in departing from the plain meaning of words, especially in a penal act, in search of an intention which the words themselves did not suggest."

The rule in this state is that penal statues are to be strictly construed, but not so strictly as to defeat the obvious intention of the Legislature.—*Reese v. State,* 73 Ala. 18; *Scott v. State,* 152 Ala. 63, 44 South. 544. The plainly indicated intention of the Legislature, in passing that part of the act approved February 23, 1907 (Gen. Acts 1907, pp. 117-129, inclusive), and which is now section 5545 of the Code, is expressed in its first few lines as follows: "Any *two or more railroads* which enter any city or town may be required, when practicable, or when the necessities of the case in the judgment of the Railroad Commission demand it, to have and maintain *one common or union passenger* station for the security, accommodation, and convenience of the traveling public." We direct attention also to the fact that said section 5545 is a section *included* in *chapter 129 of the Code of 1907* and section *5507* of the Code, which is also a part of the same chapter, provides that: "Unless clearly otherwise apparent from the context, the term 'railroad company' as used in this *chapter,* includes *any person* or *corporation* owning or *operating* a *railroad.*" It seems clear, therefore, that not only does section 5545 of the Code show, by its very

terms, the legislative purpose, but also when read in connection with said section 5507, the language of which we have quoted and in places italicized, that receivers of railroad companies are brought directly within the letter of said section 5545. Acts which are in pari materia must be read and construed together, and section 5545 of the Code, read and construed in connection with said section 5507 of the Code, clearly embraces, *within its terms,* in truth, within its *letter,* the *receivers* of railroad companies as well as railroad corporations or companies *not* in the hands of receivers.— *Powell v. Sherwood,* 162 Mo. 605, S. W. 485; *Peirce v. Van Dusen,* 78 Fed. 693, 24 C. C. A. 280, 69 L. R. A. 705.

In fact, the above interpretation of said section 5545 of the Code appears to be the only one which can be reasonably given to it. As was said by Harlan, Circuit Judge, in *Peirce v. Van Dusen, supra,* in an opinion which was concurred in by Taft and Lurton, Circuit Judges: "The appointment of a receiver of a railroad does not change the title to the property nor work a dissolution of the corporation. Although the creature of the court, and acting under its orders, the receivers, for most purposes, stands in the place of the corporation, exercising its general powers, asserting its rights, controlling its property, carrying out the objects for which it was created, discharging the public duties resting upon it, and representing the interests as well of those who own the railroad as of those who have claims against the corporation or its property. The corporation remains in existence notwithstanding a provisional receivership established by an order of court; and for the purpose of effectuating the will of the state, as manifested by the act of 1890, an action against the receiver arising out of his management of the property may be

regarded as one against the corporation 'in the hands of' or 'in the possession of' the receiver." See further, on this subject, *Central Trust Co. v. Wabash, St. L. & P. Ry. Co.* (C. C.) 26 Fed. 12; *Hornsby v. Eddy,* 5 C. C. A. 560, 56 Fed. 461; *Ind. C. & C. Ry. Co. v. Ray,* 51 Ind. 269.

6. Section 5545 of the Code of 1907 is therefore, in our opinion, in all of its parts a valid general law of this state and is operative upon all railroad companies, whether those companies are in the hands of receivers or not. As the Legislature cannot remain in continuous session and thus determine for itself *when* that section shall become *operative* in our various cities and towns, it has, under the legal limitations to which we have above referred, conferred *that* power upon the Railroad Commission which, in the administration of *this law,* is an *arm* of the state government. The authority of the Railroad Commission does not extend to the *making* of a *law* for the city of Bessemer, but it does *validly* extend to the *determination* of the question as to when an *already existing law* shall go into *operation* at that *particular point.—Whaley v. State,* 168 Ala. 152, 52 South. 941, 30 L. R. A. (N. S.) 499; *State v. Mc-Carty,* 5 Ala. App. 212, 59 South. 543; *Locke's Appeal,* 72 Pa. 491, 13 Am. Rep. 716; *Isenhour v. State,* 157 Ind. 517, 62 N. E. 40, 87 Am. St. Rep. 228; *Pierce v. Doolittle,* 130 Iowa, 333, 106 N. W. 751, 6 L. R. A. (N. S.) 143.

Conceding, therefore, as upon this appeal we must, that the order of the Railroad Commission to the appellees to build a union passenger station at Bessemer was based upon a proper finding of *fact* and that it was regularly made, *then,* when that order *was* made, said section 5545 of the Code went *into operation* at Bessemer and became as much the *law of this state* as applied to

the city of Bessemer as if, by a special act, the Legislature of Alabama had passed *a valid* special local law requiring a union passenger station to be built àt Bessemer by all of the railroads entering that city. Authorities above cited. It is not merely by virtue of the *will* of the Railroad Commission that a union passenger station must be built at Bessemer, "but because of the legislative *will* duly expressed in a statute evidencing that will." Said section 5545 of the Code of 1907 has therefore, in the manner provided by the Legislature, been placed in operation at the city of Bessemer and said section is a *general law* of this state. It is the *duty* of all persons who receive *protection* at the hands of the law to *obey* it. Recognizing the binding necessity of this truism, the Congress of the United States has expressly declared that: "Whenever, in any cause pending in any court of the United States, there shall be a receiver or manager in possession of any property, such receiver or manager shall manage and operate such property, according to the requirements of the valid laws of the state in which such property shall be situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." —4 Fed. Stat. Ann. p. 386 (U. S. Comp. St. 1901, p. 508). If, therefore, the receivers of the Atlanta, Birmingham & Atlantic Railroad Company are acting under the appointment and supervision of a federal court, they are bound, under the express mandates of a federal statute which provides a penalty for its nonobservance, to obey the valid laws of this state. In fact, we discard from consideration the suggestion that *any court* would *even·permit* one of its servants or officers, over whose acts it has plenary control, to *merely neglect* to obey, much less to *openly violate,* the terms of a *valid law.*

The courts of this union, state and federal, have one common purpose in view, viz., the due, open, honest, and impartial administration of the *law,* and there can be no conflict when the law itself is plain.—*Felton v. Ackerman,* 61 Fed. 228, 9 C. C. A. 457.

7. This proceeding in no way involves the actual custody or control of the receivers of the Atlanta, Birmingham & Atlantic Railroad Company over the property of said railroad company. It undertakes to take no property from them whatsoever. It simply undertakes to *compel* the receivers, in their operation of the railroad of which they are receivers, to obey a *valid* law of this state. The Congress of the United States has declared that "every receiver or manager of any property, appointed by any court of the United States, may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver or manager was appointed" (see Fed. Stat. Ann. vol. 4, p. 387, and authorities cited in the notes to that section), and under this section it is generally held that previous leave of the court in which the receiver was appointed, to sue a receiver, is necessary only when the suit involves the actual custody or control by the receiver of the property, or a part of the property, of which he is in possession or control as such receiver. —High on Receivers (4th Ed.) p. 542, § 495b.

The appellees, in support of their contention that the application for the writ of mandamus in this case is defective because of its failure to allege that previous leave of the court in which the receiver was appointed, to the institution of this suit, was obtained, refer us to the cases of *Moss, et al. v. Tackaberry* (Tex. Civ. App.) 134 S. W. 273, which was a suit for the *recovery* of land *from* a receiver; *Galveston, H. & H. R. Co. v. Penne-*

*father & Co.* (Tex. Civ. App.) 126 S. W. 951, which was a suit upon a cause of action which arose before the receiver was appointed; *Bennett v. Railway Co.,* 17 Wash. 534, 50 Pac. 496, which was an action to quiet the title to lands; *Smith v. St. Louis & San Francisco Railway Co.,* 151 Mo. 397, 52 S. W. 378, 48 L. R. A. 368, which was a suit upon a cause of action which arose before the appointment of the receiver; *McNulta v. Lochridge,* 141 U. S. 327, 12 Sup. Ct. 11, 35 L. Ed. 796, in which it was determined that a receiver was suable on a cause of action which arose through the act of a prior receiver; *Buckhannon, etc., Railroad Co. v. Davis,* 135 Fed. 707, 68 C. C. A. 345, in which the court held that lands in the hands of a receiver could not be condemned without leave of the court in which the receiver was appointed; *Central Trust Co. of New York v. East Tennessee, Virginia & Georgia Ry. Co.* (C. C.) 59 Fed. 523, and to *Central Trust Co. v. Wheeling & L. E. R. Co.* (C. C.) 181 Fed. 282, in which cases it was held that funds in the hands of a receiver could not be reached by process of garnishment without leave of the court in which the receiver was appointed. An attentive examination of those cases and of other authorities referred to by appellees in their briefs convinces us that they have no applicability to the instant case. The present suit was instituted for the purpose of compelling receivers, in the administration of the affairs of a corporation in this state, to obey laws which they are neglecting to obey and for which neglect they are liable to a penalty. In the case of *Ft. Dodge v. M. & St. L. Ry. Co.,* 87 Iowa, 389, 54 N. W. 243, the Supreme Court of Iowa, by a writ of mandamus, required the receivers of a railway company to construct a street crossing over its tracks, and on that subject said: "It may be conceded that all the property of the company in the hands of the receiver,

including the revenues derived from its use, is held in trust for the benefit of the creditors of the company. But it does not follow that they can control the expenditures of money and the use of the property in all cases. It is for the general benefit of all the parties in interest that the railway of the company be operated, and that its tracks and appurtenances be kept in a proper condition for that purpose."

This proceeding, in so far as the insolvent railroad company is concerned, as already stated, grows out of the *neglect* of its receivers to *obey* one of the general laws of this state, which law has become operative in the city of Bessemer by virtue of the order of the Railroad Commission. For their neglect or refusal to obey or carry out the terms of this law, these receivers, or the railroad company of which they are receivers, are liable to a penalty fixed by the act. For the collection of this penalty, undoubtedly an action, without first obtaining leave of the court in which the receivers were appointed, would lie.—High on Receivers (4th Ed.) p. 542, § 395b, and authorities cited. And as this proceeding is to compel action on the part of the receivers in a matter growing out of their management of the property as receivers and required of them by the law of this state, we can see no reason why the above-quoted federal statute does not apply to this case.—High on Receivers (4th Ed.) supra.

The above federal act authorizing suits against receivers without the leave of the court in which they were appointed provides that such suits "shall be subject to the general equity jurisdiction of the court in which such receiver or manager was appointed, so far as the same shall be necessary to the ends of justice"; and, as this is true the act, being remedial in its nature and at the same time preserving in the court in which

the receivers were appointed that general equity juris-
diction over all suits brought against them "necessary
to the ends of justice," should be given, not a narrow,
but a liberal, interpretation in order that the purpose
of Congress, in passing the act, may be given effect.
The real purpose of the act is shown by section 2 there-
of, which in effect places all receivers of corporations,
who are appointed in federal courts, and all such cor-
porations, upon the same footing with reference to valid
state laws as similar corporations not in the hands of
receivers, subject, however, at all times, to "the general
equity jurisdiction of the court in which such receiver
or manager was appointed, so far as the same shall be
necessary to the ends of justice." In other words, the
purpose of Congress in passing the act was to advance
the remedy for the enforcement of a right, and the act
should receive an interpretation at the hands of the
courts as liberal as was the purpose of Congress when
it passed the act. A remedial statute is entitled to re-
ceive an enlightened and liberal construction.

8. We are not inclined to the view that the order
under consideration is void because it does not fix the
exact spot upon which the station is to be built. The
territory within which the station is to be located is
fixed with definiteness, and the appellees should not
complain because they are allowed reasonable latitude
as to the exact spot upon which the station is to be lo-
cated. It seems to us, that the order, with sufficient def-
initeness, apportions the cost of the proposed station
among the various railroads. The books of the various
railroads necessarily show the amount of the passenger
business of each railroad at Bessemer during the 12
months next preceding the date of the order.

Neither are we of the opinion that the order is in-
valid or not final because of its failure to require the

building to be erected according to plans and specifi-
cations furnished by the Commission. The order re-
quires the appellees to build an "adequate passenger
station," and, when that order is met, the appellees will
have complied with the letter of the order. The appel-
lees, managed as they are by practical railroad men,
know how many passenger trains enter and leave Besse-
mer each day, and they can, when they proceed to com-
ply with the order, be presumed to know how to con-
struct a passenger station sufficient to meet the require-
ments of the order. The mere fact that the order has
left certain details, in complying with the terms of the
order, to the reasonable discretion of appellees, should
in no way affect the validity of the positive command
that appellees construct, for their joint use, an adequate
union passenger station at Bessemer.

It follows from what we have above said that we are
of the opinion that the petition of appellant was not
subject to the demurrer which was interposed to it by
the appellees. The judgment of the court below is there-
fore reversed, and the cause is remanded to the court
below for further proceedings not inconsistent with the
views above expressed.

Reversed and remanded.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ.,
concur.